[Cite as *State v. Lundy*, 2017-Ohio-9155.]

# Court of Appeals of Ohio

EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA

JOURNAL ENTRY AND OPINION
**No. 105117**

## STATE OF OHIO

PLAINTIFF-APPELLEE

vs.

## LAMAR LUNDY

DEFENDANT-APPELLANT

**JUDGMENT:**
AFFIRMED IN PART, REVERSED IN PART,
AND REMANDED

Criminal Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CR-15-601331-A

**BEFORE:** E.T. Gallagher, P.J., Boyle, J., and Laster Mays, J.

**RELEASED AND JOURNALIZED:** December 21, 2017

**ATTORNEY FOR APPELLANT**

Thomas A. Rein
820 West Superior Avenue, Suite 800
Cleveland, Ohio 44113


**ATTORNEYS FOR APPELLEE**

Michael C. O'Malley
Cuyahoga County Prosecutor

BY:    Oscar Albores
Assistant Prosecuting Attorney
The Justice Center, 8th Floor
1200 Ontario Street
Cleveland, Ohio 44113

EILEEN T. GALLAGHER, P.J.:

**{¶1}** Defendant-appellant, Lamar Lundy, appeals his convictions and sentence. He raises four assignments of error:

> 1.  The trial court erred by failing to grant a judgment of acquittal, pursuant to Crim.R. 29(a), on the charges, thereafter entering a judgment of conviction on those offenses as those charges were not supported by sufficient evidence, in violation of the defendant's right to due process, as guaranteed by the Fourteenth Amendment to the United States Constitution.
>
> 2.  Appellant's convictions are against the manifest weight of the evidence.
>
> 3.   The trial court committed plain error by ordering convictions for separate counts because the trial court failed to make a proper determination as to whether those offenses are allied offenses pursuant to R.C. 2941.25 and they are not part of the same transaction under R.C. 2929.14.
>
> 4.  The trial court erred by ordering appellant to pay costs in the sentencing journal entry when it waived court costs on the record and in open court.

**{¶2}** We find some merit to the appeal and affirm Lundy's convictions, but remand the case to the trial court for resentencing.

## I.   Facts and Procedural History

**{¶3}** Lundy was charged with two counts of rape, two counts of kidnapping, one count of aggravated robbery, and one count of robbery.  The kidnapping counts included sexual motivation specifications, and the rape counts included firearm and sexually violent predator specifications.  The charges resulted from an incident that occurred in the early morning hours of November 27, 2005.

**{¶4}** The victim, G.H., testified at trial that she was waiting for a bus at approximately 5:00 a.m. on November 27, 2005, when an unfamiliar man approached her and asked if she had a light. G.H. replied that she did not. The man held a knife to G.H.'s throat, forced her into the yard of a nearby house, and vaginally raped her. When she yelled for help, the man smacked G.H.'s face and said "Bitch, shut up or I'll kill you."

**{¶5}** According to G.H., the rape lasted five minutes, and the man ejaculated inside her. When it was over, the man ordered G.H. "to pee out the come." (Tr. 249.) When asked why he told her to pee, G.H. explained "because they wouldn't get his DNA from me." (Tr. 249.) Although G.H. refused to urinate, the man left her alone, and walked down the street.

**{¶6}** G.H. immediately knocked on the door of the nearby house. A lady answered and helped G.H. call 911. Paramedics transported G.H. to St. Vincent Charity Hospital where a rape kit was collected. G.H. reported to the paramedics and the sexual assault nurse examiner ("SANE nurse") that she had been raped. Upon discharge from the hospital, G.H. took a bus home and subsequently moved to Lisbon, Ohio to live with her sister.

**{¶7}** G.H. did not pursue prosecution in 2005. Although she denied telling police that she refused to prosecute, she explained, "I just wanted to just forget it, you know." (Tr. 253.) Detective Keith Hunter, of the Cleveland Police Department, Sex Crimes Unit, testified that in 2005, BCI did not test rape kits unless the victim wanted to prosecute the assailant. (Tr. 211.) In 2013, that policy changed, and now all rape kits

are tested. (Tr. 212.) G.H.'s rape kit was tested in 2014. Although G.H. did not prosecute her attacker in 2005, at the time of trial in 2016, G.H. testified that she wanted to see justice done, and that she did not want anyone else to be raped. (Tr. 253.)

{¶8} Sahir Hasan, a special investigator in the Cuyahoga County Prosecutor's Office, met with G.H. as part of the rape investigation in September 2015. (Tr. 316.) Hasan acted as a blind administrator and presented a photo lineup of suspects to G.H. that included a photograph of Lundy, but G.H. was unable to identify him from the lineup. G.H. explained that she did not "pay attention" to his appearance and that it was dark at the time of the rape. She also explained that the incident occurred 11 years before trial and thus ten years before she saw the lineup. (Tr. 244, 267, 269.)

{¶9} Melissa Zielaskiewicz, a forensic scientist at the Ohio Bureau of Criminal Investigation ("BCI"), performed DNA analysis on sperm cells and other human cells found in the rape kit. She testified that she compared DNA in the cells found in the rape kit to known standards taken from G.H. and Lundy. Based on the national database provided by the Federal Bureau of Investigation, the frequency of occurrence of the DNA profile found in the sperm cells was "one in 445 quintillion unrelated individuals." In other words, the DNA in the sperm cells found in G.H.'s rape kit matched Lundy's DNA.

{¶10} The jury found Lundy guilty of one count of rape, one count of kidnapping, and the sexual motivation specification. The court had previously granted Lundy's motion for acquittal on the other charges. The court sentenced Lundy to eight years on

the rape charge and four years on the kidnapping charge, to be served concurrently. Lundy now appeals his convictions and sentence.

## II. Law and Analysis

### A. Sufficiency and Manifest Weight

{¶11} In the first assignment of error, Lundy argues his rape and kidnapping convictions are not supported by sufficient evidence.

{¶12} The test for sufficiency requires a determination of whether the prosecution met its burden of production at trial. *State v. Bowden*, 8th Dist. Cuyahoga No. 92266, 2009-Ohio-3598, ¶ 12. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. *State v. Thompkins*, 78 Ohio St.3d 380, 386, 678 N.E.2d 541 (1997).

{¶13} Lundy was convicted of rape in violation of R.C. 2907.02(A)(2), which states, in relevant part, that "[n]o person shall engage in sexual conduct with another when the offender purposely compels the other person to submit by force or threat of force." Lundy was also convicted of kidnapping in violation of R.C. 2905.01(A)(4), which states, in relevant part, "[n]o person, by force, threat, or deception * * * shall remove another from the place where the other person is found * * * [t]o engage in sexual activity * * * with the victim against the victim's will."

{¶14} Lundy argues there was insufficient evidence to convict him of rape and kidnapping because G.H. could not identify him as the perpetrator. However, Lundy

ignores the fact that his DNA was found inside G.H.'s vagina. Although G.H. could not identify Lundy by his appearance, Zielaskiewicz identified him as the perpetrator based on his DNA. She explained that the possibility of an unrelated person having the same DNA as Lundy was "one in 445 quintillion," which statistically excluded every other person on Earth. Therefore, there was sufficient evidence that Lundy raped and kidnapped G.H.

{¶15} The first assignment of error is overruled.

### B. Manifest Weight

{¶16} In the second assignment of error, Lundy argues his convictions are against the manifest weight of the evidence.

{¶17} "A manifest weight challenge * * * questions whether the prosecution met its burden of persuasion." *State v. Thomas*, 70 Ohio St.2d 79, 80, 434 N.E.2d 1356 (1982). The manifest weight of the evidence standard of review requires us to review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses, and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. *Thompkins*, 78 Ohio St.3d at 387, 678 N.E.2d 541.

{¶18} Lundy argues his convictions are against the manifest weight of the evidence because G.H.'s testimony was not consistent with her initial report of the incident to police. In 2005, G.H. told police that Lundy threatened her with a gun but, in

2015, she reported that he used a knife. G.H. also initially reported that Lundy robbed her of $50, but she testified at trial that she was not robbed because she had no money. Finally, G.H. denied she told detectives that she refused to prosecute her attacker in 2005, but the detectives testified otherwise. Lundy argues these inconsistencies rendered her testimony unreliable.

{¶19} However, G.H. consistently reported the fact that she was vaginally raped by a stranger to the paramedics, the SANE nurse, and the police. The fact that she called 911 and went to the hospital immediately after the rape coupled with the fact that semen was found in her vagina corroborates G.H.'s testimony. Moreover, DNA does not lie. Zielaskiewicz testified that the DNA found in the sperm extracted from G.H.'s vagina matched Lundy's DNA. Therefore, this is not a case where the jury clearly lost its way and created a manifest miscarriage of justice.

{¶20} The second assignment of error is overruled.

### C. Allied Offenses

{¶21} In the third assignment of error, Lundy argues the trial court erroneously failed to merge his kidnapping and rape convictions.

{¶22} Pursuant to R.C. 2941.25(A), "[w]here the same conduct by defendant can be construed to constitute two or more allied offenses of similar import, the indictment or information may contain counts for all such offenses, but the defendant may be convicted of only one." However,

> [w]here the defendant's conduct constitutes two or more offenses of dissimilar import, or where his conduct results in two or more offenses of

the same or similar kind committed separately or with a separate animus as to each, the indictment or information may contain counts for all such offenses, and the defendant may be convicted of all of them.

R.C. 2941.25(B).

**{¶23}** Lundy argues his rape and kidnapping convictions were allied offenses of similar import that should have merged for sentencing because they involved the same conduct. However, in *State v. Ruff*, 143 Ohio St.3d 114, 2015-Ohio-995, 34 N.E.3d 892, the Ohio Supreme Court explained that an allied offenses analysis is not limited to consideration of the defendant's conduct. The *Ruff* court held that while an allied offenses analysis begins with an examination of the defendant's conduct, courts must also consider whether (1) the offenses are dissimilar in import or significance, (2) the offenses were committed separately, or (3) the offenses were committed with separate animus or motivation. *Id*. at paragraph three of the syllabus, citing R.C. 2941.25(B). Two or more offenses are of dissimilar import within the meaning of R.C. 2941.25(B) "when the defendant's conduct constitutes offenses involving separate victims or if the harm that results from each offense is separate and identifiable." *Id*. at paragraph two of the syllabus.

**{¶24}** The Ohio Supreme Court has recognized that "implicit within every forcible rape * * * is a kidnapping" because the victim's liberty is restrained during the act of forcible rape. *State v. Logan*, 60 Ohio St.2d 126, 130, 397 N.E.2d 1345 (1979). The *Logan* court provided the following guidelines for determining whether rape and kidnapping are allied offenses that should merge for sentencing:

(a) Where the restraint or movement of the victim is merely incidental to a separate underlying crime, there exists no separate animus sufficient to sustain separate convictions; however, where the restraint is prolonged, the confinement is secretive, or the movement is substantial so as to demonstrate a significance independent of the other offense, there exists a separate animus as to each offense sufficient to support separate convictions;

(b) Where the asportation or restraint of the victim subjects the victim to a substantial increase in risk of harm separate and apart from that involved in the underlying crime, there exists a separate animus as to each offense sufficient to support separate convictions.

*Id*. at syllabus.

**{¶25}** Applying these guidelines, the court in *Logan* held that the offender's conduct in forcing the victim into an alley before raping her at knife point was committed without a separate animus. The court found that because the movement was slight, the detention brief, and the victim was released immediately after the commission of the underlying crime, the kidnapping was incidental to the rape. *Id*. at 135.

**{¶26}** Although *Logan* predates *Ruff*, Ohio courts continue to apply the guidelines set forth in *Logan* to determine whether kidnapping and other offenses were committed with a separate animus, in accordance with the third prong of the *Ruff* test. *See State v. Asadi-Ousely*, 8th Dist. Cuyahoga No. 104267, 2017-Ohio-7252, ¶ 47, citing *State v. Armengau*, 10th Dist. Franklin No. 14AP-679, 2017-Ohio-4452, ¶ 125; *State v. D.E.M.*, 10th Dist. Franklin No. 15AP-589, 2016-Ohio-5638, ¶ 143; *State v. Williams*, 7th Dist. Mahoning No. 13 MA 125, 2015-Ohio-4100, ¶ 18; *State v. Stinnett*, 5th Dist. Fairfield No. 15-CA-24, 2016-Ohio-2711, ¶ 53.

**{¶27}** In *Asadi-Ousely*, the defendant removed the victim from the sidewalk to a nearby alleyway where he raped her. Although the alleyway was not far from where the victim had been walking, the defendant knocked the victim unconscious. We concluded that the movement from the sidewalk to the alleyway was "not prolonged," and the movement was "not substantial enough to demonstrate a separate animus for kidnapping apart from the rape under *Logan*." *Id*. at ¶ 51. However, the offenses did not merge because, by knocking the victim unconscious, the defendant subjected the victim to an increased risk of harm that was separate and apart from the rape. *Id*. at ¶ 52.

**{¶28}** Our opinion in *State v. Echols*, 8th Dist. Cuyahoga No. 102504, 2015-Ohio-5138, is also instructive on this issue. There were two victims in *Echols*. The first victim was walking on a sidewalk at night when a man jumped out of a tree, held a knife to the victim's throat, and removed her from the sidewalk to an area behind a nearby willow tree where he raped her. *Id*. at ¶ 3. Approximately five years later, the second victim was walking home when a strange man forced her into his car. The man subsequently hit her in the head with a brick and raped her. *Id*. at ¶ 4. Investigators later found that DNA extracted from each of the victim's rape kits matched Echols's DNA. *Id*. at ¶ 5.

**{¶29}** Echols argued that each of the rape convictions should have merged with its corresponding kidnapping conviction. Relying on *Ruff*, 143 Ohio St.3d 114, 2015-Ohio-995, 34 N.E.3d 892 and *Logan*, 60 Ohio St.2d 126, 130, 397 N.E.2d 1345, we

held that the rape and kidnapping of the first victim should have merged.   We explained:

> Victim one was moved from the sidewalk to behind a tree next to the sidewalk.   There was no increased risk of harm associated with this movement apart from that associated with the sexual assault.   This movement was done for the purpose of raping [victim one] with no separate, identifiable harm.   The movement was done in conjunction with the rape, and was not separated by any significant length of time or distance.

*Id*. at ¶ 38.

{¶30} The movement of victim two was more substantial than that of victim one. The defendant forced victim two into his vehicle, hit her with a brick, and drove her away from the area where she was found.   Based on these facts, we concluded that the "asportation of [victim two] constituted a separate crime for which [defendant] may be separately punished."   *Id*. at ¶ 40.

{¶31} G.H. testified that Lundy moved her from the bus stop to the yard of a neighboring house, where the rape occurred.   There is no evidence that they traveled any great distance for a prolonged period of time.   Nor is there any evidence that Lundy subjected G.H. to an increased risk of harm that was separate and apart from the rape, and Lundy released G.H. immediately after the rape even though she refused his command to urinate.

{¶32} Although G.H. testified that they passed through a gate in order to enter the yard of the neighboring house, there is no evidence regarding the appearance of the fence

or whether the fence concealed the rape. There is no evidence as to whether it was a chain link fence or a wood fence. Nor is there evidence regarding its height.

{¶33} Lundy obviously removed G.H. from the bus stop in order to avoid detection. But the same could be said for the defendant in *Logan* who removed his victim to an alley, and *Echols*, who removed victim one from the sidewalk to a willow tree. None of these locations are particularly secretive.

{¶34} Lundy's act of moving G.H. from the bus stop to the nearby yard was brief and the movement was slight. He also released G.H. immediately after the rape. Therefore, the kidnapping was incidental to the rape itself, there was no separate animus for the kidnapping, and the trial court should have merged the kidnapping and rape convictions for sentencing.

{¶35} Accordingly, the third assignment of error is sustained.

### D. Court Costs

{¶36} In the fourth assignment of error, Lundy argues the trial court erroneously imposed court costs in the sentencing entry after it had waived costs in open court and on the record. The state concedes this error, and our review of the record confirms that the trial court waived fines and costs at the sentencing hearing. (Tr. 529.) The erroneous imposition of court costs in the sentencing entry would normally be corrected by a nunc pro tunc journal entry to accurately reflect the court's decision to waive costs. *See State v. Lugo*, 8th Dist. Cuyahoga No. 103893, 2016-Ohio-2647, ¶ 4. However, because we

are remanding the case to the trial court for resentencing, the trial court may correct this error by waiving fines and costs in its new sentencing entry on remand.

**{¶37}** The fourth assignment of error is sustained.

**{¶38}** Judgment affirmed in part, reversed in part, and the case is remanded for purposes of resentencing on allied offenses and costs.

It is ordered that appellee and appellant share costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.


EILEEN T. GALLAGHER, PRESIDING JUDGE

MARY J. BOYLE, J., and
ANITA LASTER MAYS, J., CONCUR