[Cite as *State v. Beard*, 2021-Ohio-2512.]

## COURT OF APPEALS OF OHIO

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

| | | |
|---|---|---|
| STATE OF OHIO, | : | |
| Plaintiff-Appellee, | : | No. 109630 |
| v. | : | |
| DEMETRIUS BEARD, | : | |
| Defendant-Appellant. | : | |

---

JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED IN PART, REVERSED IN PART,
AND REMANDED
**RELEASED AND JOURNALIZED:** July 22, 2021

---

Criminal Appeal from the Cuyahoga County Court of Common Pleas
Case No. CR-19-637588-C

---

### *Appearances:*

Michael C. O'Malley, Cuyahoga County Prosecuting
Attorney, and Caroline Nelson, Assistant Prosecuting
Attorney, *for appellee.*

Paul W. Flowers Co., L.P.A., and Louis E. Grube, *for
appellant.*

EILEEN T. GALLAGHER, J.:

{¶ 1} Defendant-appellant, Demetrius Beard ("Beard"), appeals his sentence and claims the following errors:

1. The trial court committed plain error by failing to merge all of defendant's convictions at sentencing.

2. The trial court committed plain error by imposing a violent offender database registration requirement, which is an unconstitutionally retroactive penalty.

3. The trial court committed plain error by failing to provide the notices mandated by R.C. 2903.42(A)(1).

4. Defendant's counsel was constitutionally ineffective by failing to argue that his conviction for kidnapping should have merged into his other conviction.

5. Defendant's counsel was constitutionally ineffective by failing to object to the violent offender database registration requirement.

{¶ 2} We find some merit to the appeal, affirm the trial court's judgment in part, reverse it in part, and remand the case to the trial court to advise Beard of the presumption of enrollment in the violent offender database ("VOD") under R.C. 2903.42(A)(1) and of his right to rebut that presumption.

## I. Facts and Procedural History

{¶ 3} In Cuyahoga C.P. No. CR-19-637588-C, Beard was charged with one count of aggravated robbery in violation of R.C. 2911.01(A)(1), one count of aggravated burglary in violation of R.C. 2911.11(A)(2), one count of kidnapping in violation of R.C. 2905.01(A)(2), one count of receiving stolen property in violation of R.C. 2913.51(A), one count of having weapons while under disability in violation of R.C. 2923.12(A)(2), and one count of petty theft, in violation of R.C. 2913.02(A)(1). The aggravated robbery, aggravated burglary, and kidnapping charges included one- and three-year firearm and forfeiture specifications.

{¶ 4} The indictment alleged that Beard, together with codefendants Garland V. Taylor, Anthony Hicks-Stevens, and Corraune D. Paige, entered a convenience store on Noble Road in East Cleveland and committed, or attempted to commit, a theft offense. All the defendants were wearing masks and carrying firearms. Count 3 of the indictment further alleged that the defendants removed or restrained the liberty of the victim/storekeeper for the purpose of committing the aggravated robbery and aggravated burglary in the store.

{¶ 5} Beard pleaded guilty to one count of robbery, one count of burglary, and one count of kidnapping. The one-year firearm specification attendant to the aggravated robbery charge was deleted from the robbery charge in Count 1, and the one- and three-year firearm specifications were deleted from the burglary charge in Count 2. The kidnapping charge alleged in Count 3 was amended to include a notation that the victim was released to a safe place unharmed. The parties agreed that amended Counts 1 and 2 were allied offenses that should be merged for sentencing, but there was no agreement as to whether the kidnapping charge merged with the other two offenses. (Tr. 30.) Beard also agreed to forfeit certain property, including weapons. (Tr. 10, 22-23.) The remaining counts were nolled.

{¶ 6} Prior to sentencing, while Beard was out on bond, Beard's trial counsel filed a motion to withdraw, which was granted. Beard was later stopped in his vehicle and arrested pursuant to a capias that was issued after he failed to appear for sentencing in Cuyahoga C.P. No. CR-19-637588-C. Following a search of his vehicle, Beard was charged with two new counts of having weapons while under

disability and one count of improper handling of a firearm in a motor vehicle in Cuyahoga C.P. No. CR-19-644312-A. At a hearing on both of Beard's criminal cases, the court notified Beard that because of "the nature of the offense" in C.P. No. CR-19-637588-C, he will have to register as a violent offender after his release from prison. (Tr. 41.) Thereafter, Beard pleaded guilty to one count of having weapons while under disability and one count of improper handling of a firearm in a motor vehicle as alleged in Counts 1 and 3 of the indictment in C.P. No. CR-19-644312-A.

{¶ 7} In C.P. No. CR-19-637588-C, the trial court sentenced Beard to four years on the amended robbery charge alleged in Count 1, plus three years on the attendant gun specification for a total of seven years on Count 1. The court sentenced Beard to four years on the burglary charge alleged in Count 2, and four years on the kidnapping charge alleged in Count 3, to be served concurrently with each other and with the prison term on Count 1, for an aggregate seven-year prison term.

{¶ 8} In C.P. No. CR-19-644312-A the court sentenced Beard to one year in prison on his having weapons while under disability conviction and one year in prison on the improper handling of a firearm in a motor vehicle conviction to be served concurrently with each other and with the aggregate sentence imposed in C.P. No. CR-19-637588-C. This appeal followed.

## II. Law and Analysis

### A. Allied Offenses

{¶ 9} In the first assignment of error, Beard argues the trial court committed plain error by failing to merge his robbery, burglary, and kidnapping convictions in C.P. No. CR-19-637588-C.

{¶ 10} Beard's trial counsel failed to object to the trial court's failure to merge these offenses and, therefore, forfeited all but plain error. *State v. Rogers*, 143 Ohio St.3d 385, 2015-Ohio-2459, 38 N.E.3d 860, ¶ 21 ("An accused's failure to raise the issue of allied offenses of similar import in the trial court forfeits all but plain error[.]"). In the fourth assignment of error, Beard argues his trial counsel was constitutionally ineffective because he failed to argue that Beard's kidnapping conviction should merge with his other convictions. We discuss Beard's first and fourth assignments of error together because they are closely related.

{¶ 11} Under Crim.R. 52(B), "plain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court." In a plain-error analysis, the appellant bears the burden on demonstrating that, but for the error, the outcome of the proceeding would clearly have been different. *State v. Payne*, 114 Ohio St.3d 502, 2007-Ohio-4642, 873 N.E.2d 306, ¶ 17.

{¶ 12} To establish ineffective assistance of counsel, the defendant must demonstrate that counsel's performance fell below an objective standard of reasonable representation and that he or she was prejudiced by that deficient performance. *Strickland v. Washington*, 466 U.S. 668, 687-688, 104 S.Ct. 2052, 80

L.Ed.2d 674 (1984). Prejudice is established when the defendant demonstrates "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694.

{¶ 13} The state and Beard agreed as part of their plea agreement that Beard's burglary and robbery convictions were allied offenses that would merge at sentencing. (Tr. 30.) After accepting Beard's guilty pleas, the court asked on the record: "Counsel have agreed that Counts 1 and 2 will merge for sentencing purposes, correct, [Defense Counsel]?" Counsel replied, "Yes, ma'am." (Tr. 30.) The trial court never indicated an intent to deviate from the parties' agreement or warned Beard that it was not bound to follow the terms of the parties' plea agreement before accepting his guilty pleas. Yet, the court failed to merge these convictions. The state now asserts the offenses are not allied and that, in any case, Beard was not prejudiced by the failure to merge the convictions because the court ordered them to be served concurrently.

{¶ 14} However, in *State v. Underwood*, 124 Ohio St.3d 365, 2010-Ohio-1, 922 N.E.2d 923, the Ohio Supreme Court explained that "even when the sentences are to be served concurrently, a defendant is prejudiced by having more convictions than are authorized by law." *Id.* at ¶ 31. Moreover, the *Underwood* court found plain error where the parties agreed to the merger of offenses, and the court separately sentenced the defendant to concurrent prison terms for each conviction. *Id.* at ¶ 31-32. Therefore, the trial court erred in failing to merge the robbery and burglary convictions in Counts 1 and 2.

{¶ 15} The parties' plea agreement is silent as to whether Beard's kidnapping convictions should have merged with his burglary and robbery convictions. "When the plea agreement is silent on the issue of allied offenses of similar import * * *, the trial court is obligated under R.C. 2941.25 to determine whether the offenses are allied, and if they are, to convict the defendant of only one offense." *Id.* at ¶ 29. We must, therefore, determine whether Beard's kidnapping conviction is allied with his other convictions.

{¶ 16} R.C. 2941.25 codifies the protections of the Double Jeopardy Clause of the Fifth Amendment to the United States Constitution and Article I, Section 10, of the Ohio Constitution, prohibiting multiple punishments for the same offense. Under R.C. 2941.25(A), when the same conduct by the defendant "can be construed to constitute two or more allied offenses of similar import, the indictment or information may contain counts for all such offenses, but the defendant may be convicted of only one." Nevertheless, under R.C. 2941.25(B),

> [w]here the defendant's conduct constitutes two or more offenses of dissimilar import, or where his conduct results in two or more offenses of the same or similar kind committed separately or with a separate animus as to each, the indictment or information may contain counts for all such offenses, and the defendant may be convicted of all of them.

{¶ 17} Beard argues his burglary, robbery, and kidnapping convictions should have merged for sentencing because they were committed as part of the same conduct with the same animus.

{¶ 18} In *State v. Ruff*, 143 Ohio St.3d 114, 2015-Ohio-995, 34 N.E.3d 892, the Ohio Supreme Court explained that an allied offenses analysis is not limited to

consideration of the defendant's conduct. The *Ruff* Court held that while an allied offenses analysis begins with an examination of the defendant's conduct, courts must also consider whether (1) the offenses are dissimilar in import or significance, (2) the offenses were committed separately, or (3) the offenses were committed with a separate animus or motivation. *Id.* at paragraph three of the syllabus, citing R.C. 2941.25(B). Two or more offenses are of dissimilar import within the meaning of R.C. 2941.25(B) "when the defendant's conduct constitutes offenses involving separate victims or if the harm that results from each offense is separate and identifiable." *Id.* at paragraph two of the syllabus.

{¶ 19} Kidnapping and aggravated robbery may be allied offenses depending on the circumstances. *State v. Winn*, 121 Ohio St.3d 413, 2009-Ohio-1059, 905 N.E.2d 154. Indeed, "[a] brief restraint of the victim is present in every aggravated robbery." *State v. Jackson*, 1st Dist. Hamilton No. C-180341, 2019-Ohio-2027, ¶ 10, citing *State v. Morris*, 1st Dist. Hamilton No. C-150421, 2016-Ohio-5490, ¶ 17.

{¶ 20} The test for determining whether kidnapping and robbery should merge is "whether the restraint or movement of the victim is merely incidental to a separate underlying crime or, instead, whether it has a significance independent of the other offense." *State v. Logan*, 60 Ohio St.2d 126, 135, 397 N.E.2d 1345 (1979); *see also State v. Lundy*, 8th Dist. Cuyahoga No. 105117, 2017-Ohio-9155, ¶ 21-34. Where the restraint of the victim is prolonged, the confinement of the victim secretive, or the movement of the victim is substantial, there exists a separate animus for each offense. *Id.* at syllabus. A separate animus also exists where "the

asportation or restraint of the victim subjects the victim to a substantial increase in risk of harm separate and apart from that involved in the underlying crime." *Id.*

{¶ 21} At the sentencing hearing, the state described the conduct of Beard and his codefendants as follows:

> Mr. Beard and three co-defendants planned and carried out an aggravated robbery of a convenience store * * *.

> Two of the males went into the convenience store, walked around and the other two then entered. All four had firearms. It was reported by the victim they took the victim at gunpoint from behind the counter to the basement of the store searching for a safe, having the victim get on the ground in the basement. When they didn't find the safe, they, at gunpoint, brought him back upstairs, again looking for the safe.

(Tr. 70-71.)

{¶ 22} Beard and his codefendants moved the victim to the basement and back upstairs, which suggests the movement was prolonged. Beard and his codefendants were also carrying firearms, which subjected the victim to the threat of serious physical harm. Therefore, the kidnapping charge alleged in Count 3 was more than merely incidental to the robbery charge alleged in Count 2 and is not subject to merger as allied offenses.

{¶ 23} Therefore, the first and fourth assignments of error are overruled.

### B. Violent Offender Registration

{¶ 24} In the second assignment of error, Beard argues the trial court committed plain error by imposing a VOD registration requirement pursuant to Am.Sub.S.B. No. 231, also known as "Sierah's Law." *See* R.C. 2903.41 through 2903.44. He contends the VOD registry set forth in Sierah's Law is an

unconstitutionally retroactive law prohibited by Article II, Section 28 of the Ohio Constitution. He also contends his guilty pleas were not entered knowingly, intelligently, and voluntarily because the court failed to advise him that he would be subject to the VOD registration created by Sierah's Law before he pleaded guilty.

{¶ 25} Sierah's Law, which became effective on March 20, 2019, created a statewide violent offender database, which requires those convicted of certain specified offenses to enroll in a registry that will allow law enforcement to track their whereabouts for ten years following release from prison. Violent offenders with VOD duties must appear in person at the local county sheriff's office within ten days following release from prison, or after receiving notice at the sentencing hearing if the offender is not sentenced to prison, to enroll in the database. R.C. 2903.43. Thereafter, the offender must re-register annually for ten years. R.C. 2903.43.

{¶ 26} To enroll in the VOD, the offender must complete and sign an enrollment form that sets forth (1) the offender's full name and any alias the offender may have used; (2) the offender's residential address; (3) the offender's social security number; (4) the offender's driver's license number or state identification card number; (5) the offense for which the offender was convicted; (6) the name and address of the offender's employer; (7) the name and address of any school or institution of higher education the violent offender attends; (8) the vehicle identification number and license plate number for each vehicle owned or operated by the offender; and (9) a description of any scars, tattoos, or other distinguishing marks on the offender. R.C. 2903.43(C)(2)(a)-(i). The offender must also provide

finger and palm prints and annually allow his or her photograph to be taken. R.C. 2903.43(C)(3), (D)(1). If the offender moves from his or her address, the offender must notify the sheriff with whom the offender most recently enrolled of the change of address within three business days. R.C. 2903.43(E). An offender who recklessly fails to enroll, re-enroll, or notify the sheriff of a change of address is guilty of a felony of the fifth degree. R.C. 2903.43(I)(1) and (2).

## 1. Constitutionality of Sierah's Law

{¶ 27} Article II, Section 28 of the Ohio Constitution states: "The general assembly shall have no power to pass retroactive laws"[1] Beard contends that the violent-offender statutes are unconstitutionally retroactive because they are substantive, rather than remedial in nature, and became effective after he committed his offenses.

{¶ 28} Whether a statute is unconstitutional is a question of law subject to de novo review. *Cleveland v. State*, 157 Ohio St.3d 330, 2019-Ohio-3820, 136 N.E.3d 466, ¶ 15, citing *Crutchfield Corp. v. Testa*, 151 Ohio St.3d 278, 2016-Ohio-7760, 88 N.E.3d 900, ¶ 16; *Toledo, Columbus & Ohio River RR. Co. v. Miller*, 108 Ohio St. 388, 140 N.E. 617 (1923), paragraph two of the syllabus.

{¶ 29} A regularly enacted statute in Ohio "is presumed to be constitutional and is therefore entitled to the benefit of every presumption in favor of its

---

[1] Ohio's Retroactivity Clause is distinct from the Ex Post Facto Clause of the United States Constitution. *See State v. White*, 132 Ohio St.3d 144, 2012-Ohio-2583, 972 N.E.2d 534. While Ohio's Retroactivity Clause broadly prohibits retroactive legislation that impairs substantial rights, the Ex Post Facto Clause applies only to criminal statutes. *See State v. Cook*, 83 Ohio St.3d 4040, 700 N.E.2d 570 (1998).

constitutionality." *State ex rel. Dickman v. Defenbacher*, 164 Ohio St. 142, 128 N.E.2d 59 (1955), paragraph one of the syllabus. The presumption of constitutionality cannot be overcome "unless it appear[s] that there is a clear conflict between the legislation in question and some particular provision or provisions of the Constitution." *Xenia v. Schmidt*, 101 Ohio St. 437, 130 N.E. 24 (1920), paragraph two of the syllabus; *Dickman* at 147. The party challenging the statute bears the burden of proving it is unconstitutional beyond a reasonable doubt. *State v. Anderson*, 57 Ohio St.3d 168, 171, 566 N.E.2d 1224 (1991).

{¶ 30} Despite the Ohio Constitution's prohibition against retroactive laws, the Ohio Supreme Court has held that "'retroactivity itself is not always forbidden by Ohio law." *State v. White*, 132 Ohio St.3d 344, 2012-Ohio-2583, 972 N.E.2d 534, ¶ 31. "Ohio courts have long recognized that there is a crucial distinction between statutes that merely apply retroactively * * * and those that do so in a manner that offends our Constitution." *Bielat v. Bielat*, 87 Ohio St.3d 350, 353, 721 N.E.2d 28 (2000).

{¶ 31} Determining whether a statute is unconstitutionally retroactive involves a two-step process. *Id.* at ¶ 27. A court must first determine whether the General Assembly "expressly made the statute retroactive." *Hyle v. Porter*, 117 Ohio St.3d 165, 2008-Ohio-542, 882 N.E.2d 899, ¶ 8. Statutes are presumed to apply prospectively unless the General Assembly expressly indicates that a statute applies retrospectively. R.C. 1.48 ("A statute is presumed to be prospective in its operation unless expressly made retrospective."). If the legislature did not intend the statute

to be applied retroactively, the analysis ends and the statute may not be applied retroactively. *White* at ¶ 27, citing R.C. 1.48. If the General Assembly expressly intended a statute to apply retroactively, the court must move to the second step of the analysis and "determine whether the statute is remedial, in which case retroactive application is permitted, or substantive, in which case retroactive application is forbidden." *Id*. *See also State v. Walls*, 96 Ohio St.3d 437, 2002-Ohio-5059, 775 N.E.2d 829, ¶ 10; *Cook,* 83 Ohio St.3d at 410-411, 700 N.E.2d 570.

{¶ 32} R.C. 2903.42 provides that enrollment in the violent offender database is presumed for all violent offenders. R.C. 2903.41(A) defines a "violent offender" as:

> (1) A person who on or after the effective date of this section is convicted of or pleads guilty to any of the following:
>
> (a) A violation of section 2903.01 [aggravated murder], 2903.02 [murder], 2903.03 [voluntary manslaughter], 2905.01 [kidnapping] of the Revised Code or a violation of section 2905.02 [abduction] of the Revised Code that is a felony of the second degree;
>
> (b) Any attempt to commit, conspiracy to commit, or complicity in committing any offense listed in division (A)(1)(a) of this section.
>
> (2) A person who on the effective date of this section has been convicted of or pleaded guilty to an offense listed in division (A)(1) of this section and is confined in a jail, workhouse, state correctional institution, or other institution, serving a prison term, term of imprisonment, or other term of confinement for the offense.

{¶ 33} The VOD registration requirements expressly apply to any violent offender who "on the effective date * * * has been convicted or pleaded guilty" to a specified violent offense and is confined for that offense. R.C. 2903.41(A)(2). The

registration requirements also apply to any person who "on or after the effective date * * * is convicted or pleads guilty" to a specified violent offense. R.C. 2903.41(A)(1). Both sections apply regardless of when the offense was committed and, therefore, include offenses occurring before the effective date of the statutes. Therefore, the statutes are retroactive because the General Assembly plainly intended the registration requirements to apply to conduct occurring before the statutes' effective date.

{¶ 34} Having determined that the violent offender registration requirements of Sierah's Law apply retroactively, we must next determine whether the statutory provisions are substantive or remedial. "A purely remedial statute does not violate Section 28, Article II of the Ohio Constitution, even if applied retroactively." *Cook*, 83 Ohio St.3d at 411, 700 N.E.2d 570. However, "[i]f a statute affects a substantial right, then it offends the constitution." *State v. Ferguson*, 120 Ohio St.3d 7, 2008-Ohio-4824, 896 N.E.2d 110, ¶ 13, citing *Van Fossen v. Babcock & Wilcox Co.*, 36 Ohio St.3d 100, 107, 522 N.E.2d 489 (1988).

{¶ 35} "A statute is 'substantive' if it impairs or takes away vested rights, affects an accrued substantive right, imposes new or additional burdens, duties, obligations, or liabilities as to a past transaction, or creates a new right." *Id.*, citing *Van Fossen* at 107. "[R]emedial laws are those affecting only the remedy provided, and include laws that merely substitute a new or more appropriate remedy for the enforcement of an existing right." *Id.*, citing *Van Fossen* at 107.

{¶ 36} "Where no vested right has been created, 'a later enactment will not burden or attach a new disability to a past transaction * * * in the constitutional sense, unless the past transaction * * * created at least a reasonable expectation of finality.'" *Cook* at 412, quoting *State ex rel. Matz v. Brown*, 37 Ohio St.3d 279, 281, 525 N.E.2d 805 (1988). The commission of a felony is not a past transaction that creates a reasonable expectation of finality. *White*, 132 Ohio St.3d 344, 2012-Ohio-2583, 972 N.E.2d 534 at ¶ 43. "Except with regard to constitutional protections against ex post facto laws, * * * felons have no reasonable right to expect that their conduct will never thereafter be made the subject of legislation." *Matz* at 281-282.

{¶ 37} The Ohio Supreme Court previously held that certain sex-offender-registration statutes in effect in the 1990s and early 2000s were remedial even though they imposed new duties on sex offenders retroactively. *See Cook* at 409 (upholding the constitutionality of the 1997 version of R.C. Chapter 2950); *Ferguson*, 120 Ohio St.3d 7, 2008-Ohio-4824, 896 N.E.2d 110 (upholding the constitutionality of the 2003 version of R.C. Chapter 2950). In *Ferguson*, the court observed that "Ohio retroactivity analysis does not prohibit all increased burdens; it prohibits only increased punishment." *Id.* at ¶ 39.

{¶ 38} In *State v. Williams*, 129 Ohio St.3d 344, 2011-Ohio-3374, 952 N.E.2d 1108, the Ohio Supreme Court later found that the amendments contained in the Adam Walsh Act ("AWA") were punitive and, therefore, could not constitutionally be applied retroactively. In *Williams*, the court did not consider whether offenders affected by the new registration requirements had a vested right or "reasonable

expectation of finality" in their registration status. Instead, the court described the onerous nature of the registration requirements and found that the newly imposed duties were so burdensome that they were punitive in nature and, therefore, violated the Retroactivity Clause of the Ohio Constitution. *Id.* at ¶ 19-21.

{¶ 39} Thereafter, in *White*, 132 Ohio St.3d 344, 972 N.E.2d 534, the Ohio Supreme Court considered the constitutionality of R.C. 2929.06(B), a statute providing that where an offender's death sentence has been vacated, the trial court must empanel a new jury and conduct a new penalty hearing. The new law replaced the rule set forth in *State v. Penix*, 32 Ohio St.3d 369, 513 N.E.2d 744 (1987), which held that when a death sentence imposed by a jury has been vacated for a penalty-phase error, the trial court could not empanel a new jury to impose a new death sentence; it was required to sentence the defendant to life in prison. *White* at ¶ 5. R.C. 2929.06(B) allowed a new jury to reconsider the death penalty on remand. *Id.* at ¶ 3. The defendant in *White* argued that because his crime occurred before enactment of R.C. 2929.06(B), it could not be retroactively applied to him. *Id.* at ¶ 12.

{¶ 40} The court rejected the defendant's argument and found that the retroactive statute was remedial rather than substantive in nature and, therefore, could be applied retroactively. In reaching this conclusion, the court noted that R.C. 2929.06(B) did not increase the punishment for the underlying crime because the death penalty was available at the time the crime was committed and at the time of resentencing. *Id.* at ¶ 33. The court then considered whether the defendant had a

vested or accrued right to be sentenced in accordance with the law articulated in *Penix*. *Id.* at ¶ 34-35. The court defined "accrued right" as a "'right that is ripe for enforcement.'" *Id.* at ¶ 35, quoting Garner, *Black's Law Dictionary* 1436 (9th Ed.2009). The court further explained that "'[a] right, not absolute but dependent for its existence upon the action or inaction of another, is not basic or vested * * *.'" *Id.*, quoting *Hatch v. Tipton*, 131 Ohio St. 364, 368, 2 N.E.2d 875 (1936), paragraph two of the syllabus. The *White* court found that R.C. 2929.06(B) did not impair any accrued right because the defendant's alleged right to be resentenced under *Penix* could not have vested until his original sentence had been invalidated, which occurred after the enactment of the new law. *Id.* at ¶ 37.

{¶ 41} Finally, the court found that R.C. 2929.06(B) was not substantive because it did not impose a new burden on the defendant since the defendant had the burden of defending against the death penalty at the time of his original trial. *Id.* at ¶ 41. The court reiterated that "'the commission of a felony' is not a transaction that creates a reasonable expectation of finality" and that "[e]xcept with regard to constitutional protections against ex post facto laws * * *, felons have no reasonable right to expect that their conduct will never thereafter be made the subject of legislation." *Id.* at ¶ 43, quoting *Matz*, 37 Ohio St.3d at 281-282, 525 N.E.2d 805. Thus, the court found that because the defendant "could have no reasonable expectation of finality with respect to *Penix* on the date of the murder, retroactive application of R.C. 2929.06(B) to White's resentencing d[id] not create a new burden 'in the constitutional sense.'" *Id.* at ¶ 44, quoting *Matz* at 281.

{¶ 42} A violent offender will only be subjected to punishment under Sierah's Law if he or she fails to enroll in the database, re-enroll in the database, or notify the sheriff of a change of address. R.C. 2903.43(I)(2). "[C]lassification as a violent offender and enrollment into the violent offender database 'is a collateral consequence of the offender's criminal acts rather than a form of punishment per se.'" *State v. Hubbard*, 2020-Ohio-856, 146 N.E.3d 593, ¶ 32 (12th Dist.), quoting *Ferguson*, 120 Ohio St.3d 7, 2008-Ohio-4824, 896 N.E.2d 110, at ¶ 34. And, because "felons have no reasonable right to expect that their conduct will never thereafter be made the subject of legislation," they cannot claim a vested right in not being subject to VOD requirements. *Matz*, 37 Ohio St.3d at 281-282, 525 N.E2d 805.

{¶ 43} Moreover, the registration requirements under Sierah's Law are not so burdensome as to amount to a form of punishment that may not be imposed retroactively. The VOD duties are less onerous than those of the AWA. In contrast to the automatic sex offender classifications under the AWA, there is a presumption that an individual who qualifies as a "violent offender" must register with the database, but the presumption may be rebutted with proof, by a preponderance of the evidence, that "the offender was not the principal offender in the commission of the offense." R.C. 2903.42(A)(2)(a) and 2903.42(A)(4)(a).

{¶ 44} Sex offenders, depending on the tier of registration, may be required to register, in person, every 90 days for life, or every 180 days for 25 years. R.C. 2950.07(B)(2); R.C. 2905.06(B)(3). Under R.C. 2903.42, a violent offender is

required to register with the local sheriff's office once per year for ten years. R.C. 2903.43(D)(1). The sex-offender registry established under the AWA is a public registration and is published on the internet. VOD information is not published online, and the VOD is only accessible by federal, state, and local law enforcement officers, and is not a public record, although some information held by the local sheriff is subject to Ohio's Public Records Law.[2] R.C. 2903.43(F)(2); R.C. 2903.43(F)(3)(a) and 2903.42(F)(3)(b).

{¶ 45} Sex offenders under the AWA are subject to certain residency restrictions while violent offenders under Sierah's Law are not. *See* R.C. 2950.031. And, unlike the strict-liability standard for failure-to-register offenses under the AWA, a failure-to-register offense under Sierah's Law imposes a recklessness standard, and any failure-to-register results in a fifth-degree felony, which carries a presumption of community control. R.C. 2950.04(E); R.C. 2903.43(I)(1). Failure to register as a sex offender under the AWA constitutes a felony of the same degree as the underlying sexually oriented offense. R.C. 2950.99. Thus, if a sex offender committed a first-degree felony, the failure to register constitutes another first-degree felony, which carries a potential prison term of 11 to 16.5 years. R.C. 2950.99(A)(1)(a); R.C. 2929.14(A)(1)(a); R.C. 2929.144(B)(1).

{¶ 46} Based on these differences, courts have concluded the registration provisions of Sierah's Law are "'not so punitive that they impose a new burden in

---

[2] *See* R.C. 2903.43(F)(3)(a) and (b).

the constitutional sense, as contemplated by *Williams*[,]' and, instead, are remedial in nature." *State v. Rike*, 1st Dist. Hamilton No. C-190401, 2020-Ohio-4690, ¶ 62, quoting *Hubbard*, 2020-Ohio-856, 146 N.E.3d 593, ¶ 37 (12th Dist.). *See also State v. Morgan*, 2020-Ohio-3955, 156 N.E.3d 989 (9th Dist.)(finding no retroactivity-clause violation). *But see State v. Jarvis*, 5th Dist. Muskingham No. CT 2019-0029, 2020-Ohio-1127 (holding that the violent offender registration requirements of Sierah's Law violate Section 28, Article II of the Ohio Constitution).[3]

{¶ 47} In *Hubbard*, the Twelfth District observed that the VOD statutes are more akin to the arson offender registration requirements set forth in R.C. 2909.13, 2909.14, and 2909.15, which have been found to be remedial in nature. *Id.* at ¶ 37. Arson offenders must complete their first registration within ten days after being released from prison and must re-register with the local sheriff annually for life. R.C. 2909.15(D). And, similar to the VOD enrollment requirements, arson offenders must provide (1) the offender's name and any aliases; (2) the offender's residential address; (3) the offender's social security number; (4) the offender's driver's license number or state identification card number; (5) the offense for which the offender was convicted; (6) the name and address of the offender's employer; (7) the name and address of any school or institution of higher education the violent offender

---

[3] The Ohio Supreme Court has certified a conflict between the Twelfth and Fifth Districts on the issue of whether the violent offender registration statutes, when applied to an offense that occurred before the statutes' March 20, 2019 effective date, violate the prohibition against retroactive statutes contained in Article II, Section 28, of the Ohio Constitution. *See State v. Hubbard*, 159 Ohio St.3d 1427, 2020-Ohio-3473, 148 N.E.3d 568; *State v. Jarvis*, 159 Ohio St.3d 1427, 2020-Ohio-3473, 148 N.E.3d 568.

attends; (8) the vehicle identification number and license plate number for each vehicle owned or operated by the offender; (9) a description of any scars, tattoos, or other distinguishing marks on the offender; and (10) any other information required by the Attorney General.  R.C. 2909.15(C)(2)(a) through (j).  An arson offender must also provide finger and palm prints and allow his photograph to be taken.  R.C. 2909.15(C)(3).

{¶ 48} The arson registry is maintained by the Bureau of Criminal Identification and Investigation and is only accessible to the fire marshal's office, state and local law enforcement officers, and certain authorized firefighters.  R.C. 2909.15(E)(2).  Like the VOD, the arson offender registry is not available to the public.  R.C. 2909.15(E)(2).

{¶ 49} We agree the VOD established by Sierah's Law is similar to the arson offender registry, which has been constitutionally upheld as a remedial statute.  *See State v. Caldwell*, 1st Dist. Hamilton No. C-130812, 2014-Ohio-3566; *State v. Reed*, 11th Dist. Lake No. 2013-L-130, 2014-Ohio-5463.  Accordingly, we find the statutory provisions set forth in R.C. 2903.41 through 2903.44, which establish the VOD requirements for violent offenders, are remedial in nature and, therefore, constitutional.

### 2.  Guilty Pleas

{¶ 50} Beard nevertheless contends that his guilty pleas were not knowingly, intelligently, and voluntarily made because the court failed to advise him that he

would be subject to VOD enrollment before he pleaded guilty to violent offenses that would subject him to the VOD.

{¶ 51} Pursuant to Crim.R. 11(C)(2)(a), a court shall not accept a guilty plea in a felony case without first addressing the defendant personally and determining whether he is making the plea voluntarily and with full understanding of the nature of the charge and of the maximum penalty involved. The maximum penalty, however, does not include the registration requirements under the VOD. *See State v. Rogers*, 8th Dist. Cuyahoga Nos. 105335 and 105518, 2017-Ohio-9161, ¶ 22 ("The maximum penalty, however, does not include the registration requirements under the Ohio Arson Registry.").

{¶ 52} As previously stated, the VOD requirements are not punitive; they are remedial, collateral consequences of the underlying violent offenses. *Hubbard*, 2020-Ohio-856, 146 N.E.3d 593, ¶ 32 (12th Dist.), quoting *Ferguson*, 120 Ohio St.3d 7, 896, 2008-Ohio-4824, N.E.2d 110, at ¶ 34. ("classification as a violent offender and enrollment into the violent offender database 'is a collateral consequence of the offender's criminal acts rather than a form of punishment per se.'").

{¶ 53} This court has held that because registration requirements are collateral consequences rather than punishment, Crim.R. 11 does not require a trial court to inform a defendant of the registration and notification requirements before accepting a defendant's guilty plea. *Rogers* at ¶ 25 (holding that trial court was not required to inform the defendant of arson registration requirements before accepting the defendant's guilty plea because the arson registration requirements

were collateral consequences of conviction rather than punishment); *See also State v. Rice*, 8th Dist. Cuyahoga No. 72685, 1999 Ohio App. LEXIS 535 (Feb. 18, 1999) (holding that trial court was not required to inform defendant of sex offender registration requirements under Megan's Law since the notification and registration requirements "merely collateral consequences to defendant's decision to plead guilty to the sexually oriented offenses."). Therefore, the trial court was not required to inform Beard of the applicable registration requirements before accepting his guilty pleas.

{¶ 54} The second assignment of error is overruled.

### C. Notices Mandated by R.C. 2903.42(A)(1)

{¶ 55} In the third assignment of error, Beard argues the trial court committed plain error by failing to provide the notices required by R.C. 2903.42(A)(1). In the fifth assignment of error, Beard argues his trial counsel was constitutionally ineffective because he failed to object to the VOD registration requirements and failed to file a motion to rebut the presumption that Beard was a violent offender as defined by R.C. 2903.42. We discuss these assigned errors together because they are closely related.

{¶ 56} As previously stated, in a plain-error analysis, the appellant bears the burden on demonstrating that, but for the error, the outcome of the proceeding would clearly have been different. *Payne*, 114 Ohio St.3d 502, 2007-Ohio-4642, 873 N.E.2d 306, at ¶ 17. To establish a claim for ineffective assistance of counsel, the appellant must show that counsel's performance fell below an objective standard of

reasonable representation and that he or she was prejudiced by that deficient performance. *Strickland*, 466 U.S. 668, 687-688, 104 S.Ct. 2052, 80 L.Ed.2d 674. Prejudice is established when the defendant demonstrates "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694.

{¶ 57} R.C. 2903.42(A)(1) provides, in relevant part:

(1) For each person who is classified a violent offender, it is presumed that the violent offender shall be required to enroll in the violent offender database with respect to the offense that so classifies the person and shall have all violent offender database duties with respect to that offense for ten years after the offender initially enrolls in the database. The presumption is a rebuttable presumption that the violent offender may rebut as provided in division (A)(4) of this section, after filing a motion in accordance with division (A)(2)(a) or (b) of this section, whichever is applicable. Each violent offender shall be informed of the presumption established under this division, of the offender's right to file a motion to rebut the presumption, of the procedure and criteria for rebutting the presumption, and of the effect of a rebuttal and the post-rebuttal hearing procedures and possible outcome, as follows:

(a) If the person is classified a violent offender under division (A)(1) of section 2903.41 of the Revised Code, the court that is sentencing the offender for the offense that so classifies the person shall inform the offender before sentencing of the presumption, the right, and the procedure, criteria, and possible outcome.

{¶ 58} R.C. 2903.42(A)(1) is a mandatory provision; "[e]ach violent offender shall be informed of the presumption * * *, of the offender's right to file a motion to rebut the presumption, of the criteria for rebutting the presumption, and of the effect of a rebuttal." *Id.* (Emphasis added.) The state concedes that the trial court

erred in failing to advise Beard of his right to rebut the presumption. (Appellees' brief, p. 17.)

{¶ 59} In *State v. Walker*, 8th Dist. Cuyahoga No. 109142, 2021-Ohio-580, this court recently held that a trial court commits reversible error when it fails to properly advise a violent offender of the presumption established under R.C. 2903.42(A)(1), the offender's right to file a motion to rebut the presumption, of the procedure and criteria for rebutting the presumption, and of the effect of a rebuttal and post-rebuttal hearing procedures and possible outcome. *Id.* at ¶ 31-42. In reaching this conclusion, this court observed that the defendant did not have an opportunity to prepare for an enrollment hearing, did not have an opportunity to file a written motion to rebut the presumption, and did not have the opportunity to present evidence to rebut the presumption. *Id.* at ¶ 38. He was, therefore, prejudiced by the trial court's failure to advise him of his right to rebut the presumption and by the lack of opportunity to present evidence and argument to rebut the presumption.

{¶ 60} The trial court similarly failed to advise Beard of the presumption established under R.C. 2903.42(A)(1) and of his right to file a motion to rebut the presumption. He, therefore, was deprived of the opportunity to present evidence to rebut the presumption. And since Beard pleaded guilty, there is insufficient evidence on which to conclude that Beard's attempts to rebut the presumption would have been futile.

{¶ 61} We, therefore, sustain the third and fifth assignments of error.

{¶ 62} The trial court's judgment is affirmed in part and reversed in part. The case is remanded to the trial court to advise Beard of the presumption of enrollment in the VOD under R.C. 2903.42(A)(1), his right to file a motion to rebut the presumption, the procedure and criteria for rebutting the presumption, and the effect of a rebuttal and post-rebuttal hearing procedures and possible outcome as required by R.C. 2903.42(A)(1).

It is ordered that appellee and appellant share costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
EILEEN T. GALLAGHER, JUDGE

ANITA LASTER MAYS, P.J., CONCURS;
MARY EILEEN KILBANE, J., DISSENTS WITH SEPARATE ATTACHED OPINION

MARY EILEEN KILBANE, J., DISSENTING:

{¶ 63} I respectfully dissent. I would find that the violent offender database requirements of Sierah's Law, R.C. 2903.41 et seq., as applied to a defendant such as Beard who committed an offense prior to the March 20, 2019, enactment violates Article II, Section 28 of the Ohio Constitution and Article I, Section 9 of the United

States Constitution. *State v. Jarvis*, 2020-Ohio-1127, 152 N.E.3d 1225 (5th Dist.).

Therefore, I would reverse and remand the case to the trial court.