[Cite as *State v. Wooden*, 2022-Ohio-814.]

## COURT OF APPEALS OF OHIO

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

| | | |
|---|---|---|
| STATE OF OHIO, | : | |
| Plaintiff-Appellee, | : | |
| | | No. 110340 |
| v. | : | |
| JYVARIS WOODEN, | : | |
| Defendant-Appellant. | : | |

JOURNAL ENTRY AND OPINION

**JUDGMENT:** VACATED AND REMANDED
**RELEASED AND JOURNALIZED:** March 17, 2022

Criminal Appeal from the Cuyahoga County Court of Common Pleas
Case No. CR-18-634212-A

*Appearances:*

Michael C. O'Malley, Cuyahoga County Prosecuting Attorney, and Brandon A. Piteo, Assistant Prosecuting Attorney, *for appellee.*

Paul W. Flowers Co., L.P.A., and Louis E. Grube, *for appellant.*

MARY EILEEN KILBANE, J.:

{¶ 1} Defendant-appellant Jyvaris Wooden ("Wooden") appeals from his conviction following a guilty plea pursuant to a plea deal with the state. For the reasons that follow, we vacate and remand.

**PROCEDURAL AND FACTUAL BACKGROUND**

{¶ 2} On October 30, 2018, Wooden and the victim got into an altercation after the victim, while driving a lawnmower, hit a wooden plank erected to indicate Wooden's property line. Wooden, an army veteran with a history of post-traumatic stress disorder and childhood trauma, not only activated his home alarm system, he approached the victim with a baseball bat and firearm. A public utility worker saw Wooden swing the bat at the victim twice before struggling with the victim, who attempted to disarm Wooden. During the struggle, Wooden shot the victim in the abdomen. Wooden then used his home alarm system to call 911 and explained that he shot the victim because he was trespassing on Wooden's property.

{¶ 3} On November 7, 2018, a Cuyahoga County Grand Jury indicted Wooden on a four-count indictment: Count 1, attempted murder, in violation of R.C. 2923.02 and 2903.02(A); Count 2, felonious assault, in violation of R.C. 2903.11(A)(1); and Counts 3 and 4, felonious assault, in violation of R.C. 2903.11(A)(2). The first three counts of the indictment included one- and three-year firearm specifications as well as a weapon forfeiture specification.

{¶ 4} Following a pretrial hearing on December 6, 2018, at defense counsel's request, the trial court referred Wooden to the court psychiatric clinic, in accordance with R.C. 2945.371, to evaluate his competence to stand trial, sanity at the time of the act, and eligibility for mental health/developmental disability due to a psychotic disorder. On January 3, 2019, the court psychiatric clinic's psychologist, Dr. Nicole Livingston ("Dr. Livingston") issued a report finding Wooden to be

competent and not eligible for the mental health docket. The parties stipulated to the competency findings.

{¶ 5} On February 11, 2019, at defense counsel's request, the court again referred Wooden to the court psychiatric clinic to evaluate his sanity. Wooden was then interviewed for two hours by Dr. Aileen M. Hernandez ("Dr. Hernandez") on February 28, 2019. Dr. Hernandez prepared a report and submitted it to the court on March 12, 2019, opining that Wooden was sane. In preparing her report, Dr. Hernandez had reviewed Wooden's prior medical records from the VA Hospital from 2016, to August 2018, as well as his Cuyahoga County Jail records from November 3, 2018, to February 1, 2019.

{¶ 6} On August 2, 2019, the court held a plea hearing. The state outlined the terms of the plea agreement, which the court subsequently confirmed with Wooden and his counsel. Pursuant to the plea agreement, Wooden would plead guilty to an amended Count 1, attempted murder in violation of R.C. 2923.02 and 2903.02(A) with a three-year firearm specification and a weapon forfeiture specification; and an amended Count 4, attempted felonious assault in violation of R.C. 2923.02 and 2903.11(A)(2). The remaining counts and specifications would be nolled. The court then engaged Wooden in a Crim.R. 11 colloquy. The court informed Wooden of the rights he was giving up by pleading guilty, and Wooden stated he understood each right and wished to waive them and plead guilty.

{¶ 7} The trial court also informed Wooden that his offenses were qualified offenses pursuant to R.C. 2903.41, also known as Sierah's Law, which would require

him to register as a violent offender in the statewide database. Wooden responded that he understood that requirement. The court referred Wooden for the preparation of a presentence investigation and mitigation report.

{¶ 8} On August 27, 2019, the court held a sentencing hearing. The court reviewed the PSI and previous reports from the court psychiatric clinic, and the court also received two letters written by the victim's children. The court then heard from defense counsel, Wooden, the assistant prosecuting attorney, the victim, and the victim's wife. The victim and his wife detailed how the victim lost his spleen and left kidney, had to be put on a ventilator for his almost monthlong stay at the hospital, and is still suffering from breathing issues and back and abdominal pain from his wounds. The court also heard from defense counsel, who discussed Wooden's mental health issues that required him to see a psychiatrist twice a week at the VA for his bipolar disorder, post-traumatic stress disorder, anxiety, depression, seizures, and substance abuse issues.

{¶ 9} After hearing these statements and reviewing the evidence, the court found that the psychological reports revealed Wooden had a history of mental health issues. The court found that despite Wooden's minimal criminal history, he was still a danger to his community with a history of acting out in his neighborhood. The court acknowledged that Wooden had been receiving treatment for his mental health issues at the time of this incident, but the treatment was clearly not enough to prevent his violent overreaction. The court then went on to find:

And for these reasons I'm going to find specifically that consecutive sentences are necessary to protect our community and to punish you, consecutive sentences are not disproportionate to the harm that you created or the harm you posed, the threat of future danger, and I'm specifically finding that the harm was so great or unusual a single term does not adequately reflect the seriousness of your conduct.

Hitting the victim with the bat, confronting him for no good reason and then when he tries to protect himself in a rather benign way you shoot him. So that's just — it's the worst form of the offense. It indicates to this Court that consecutive sentences are necessary to punish you, protect our community, and are not disproportionate to the harm you caused or the threat that you remain to our community.

I do feel that there is some mitigation present, that you took some actions after the fact to come to some aid to the victim and you've shown remorse here today, so I'm taking that into consideration as well.

So I'm going to sentence you as follows: In [Count 1], attempted murder, a felony of the first degree, 11 years in Lorain Correctional Institution. The three-year firearm specification must be served prior to and consecutive to that 11-year sentence.

Count two, attempted felonious assault, a felony of the third degree, 24 months at Lorain Correctional Institution to be served consecutive to the 11 years in [Count 1] and the three-year firearm specification, so that's a total of 16 years at the Lorain Correctional Institution.

In addition to the aggregate 16-year sentence described above, the court also informed Wooden about the mandatory five-year postrelease control that was also part of his sentence. Finally, the court advised Wooden of his right to appeal the sentence.

{¶ 10} On September 16, 2019, Wooden appealed his sentence. On October 22, 2020, this court dismissed the appeal for lack of a final appealable order:

Sua sponte, the appeal is dismissed for lack of a final, appealable order as required by R.C. 2505.02. To constitute a final order in a criminal case, Crim.R. 32(C) requires an entry to contain (1) the fact of the

conviction, (2) the sentence, (3) the judge's signature, and (4) the time stamp indicating the entry upon the journal by the clerk. *State v. Lester*, 130 Ohio St.3d 303, 2011-Ohio-5204, 958 N.E.2d 142, paragraph one of the syllabus. Further, a valid judgment of conviction requires a resolution of all counts for which there were convictions. *State ex rel Davis v. Cuyahoga Cty. Court of Common Pleas*, 127 Ohio St.3d 29, 2010-Ohio-4728, 936 N.E.2d 41, ¶2. The journal entry memorializing appellant's guilty pleas, filed August 1, 2019, stated that appellant pled guilty to Counts 1 and 4 and that Counts 2 and 3 were nolled. However, the entry goes on to impose sentence on Counts 1 and 2. No sentence was imposed on Count 4. Further, the error cannot be corrected nunc pro tunc. The transcript indicates that appellant pled guilty to Counts 1 and 4. (Tr. 24-25, 30.) The transcript also provides that the trial court imposed sentence on Counts 1 and 2, rather than Counts 1 and 4. (Tr. 54-55.) No sentence was imposed on Count 4. Appeal dismissed at appellant's costs.

Judgment Entry filed October 22, 2020, 8th Dist. Cuyahoga No. 109170.

{¶ 11} On November 24, 2020, Wooden filed a pro se motion to withdraw his guilty plea. Wooden argued that his plea agreement had been breached when he was sentenced on Count 2 instead of an amended Count 4 and that he was entitled to choose between withdrawing his guilty plea or requesting specific performance of the agreement. He also alleged that a manifest injustice had occurred when his plea agreement was breached.

{¶ 12} A hearing was held on January 26, 2021, for the court to sentence Wooden on the amended Count 4 and to address Wooden's pending motion to withdraw his plea. The court addressed the sentencing error and clarified the mistake on the record:

For the record, Count 1 was attempted murder, in violation of section 2923.02 and 2903.02(A), a Felony of the 1st Degree with a three-year firearm specification, a forfeiture. Count 4, which [Wooden] pled to, was felonious assault, attempted felonious assault, a Felony of the 3rd

Degree, in violation of section 2923.02 and 2903.11(A)(2), a Felony of the 3rd Degree as amended.

The Court sentenced the defendant to 11 years in Count 1 and found that consecutive sentences were necessary and I imposed 24 months in Count 4, although I mislabeled it Count 2.

{¶ 13} Wooden was then permitted to address the court regarding his pending motion to withdraw his guilty plea. Wooden argued that pursuant to his plea agreement he pleaded guilty to Count 1 and Count 4, but this agreement was breached by the court when he was sentenced on Count 2 instead of Count 4. Wooden stated that the court's breach voided his sentence and entitled him to withdraw his plea or seek specific performance of the agreement. Wooden then argued the court made a reversible error by accepting his plea without conducting a competency hearing and that his trial counsel was ineffective for not requesting a competency hearing. The court clarified for the record that two mental health assessments had been reviewed by the court and that both reports indicated Wooden was competent. Further, the court found that the findings in these reports were stipulated to by the parties prior to Wooden's plea.

{¶ 14} Wooden then explained to the court why he believed he was in fact incompetent at the time of the offense and that his plea was invalid by reason of insanity:

THE DEFENDANT: Yes, Your Honor. Most importantly, at the time of the commission of the act, they did not provide evidence to the prosecuting prosecutor that I did have an anxiety attack, which was treated at The Cleveland Clinic. That evidence was withheld from the State prosecutor, which that has not been anywhere in the report on the record.

THE COURT: Are you saying your anxiety attack after this incident caused you to be incompetent at the time of your plea?

THE DEFENDANT: During the commission of the offense, I also put it on the record that I had an anxiety attack. That was not provided to the Court or State prosecutor. That was not on the record.

THE COURT: What was the effect of the anxiety attack on you?

THE DEFENDANT: When me and this guy, the landscaper, had got into an altercation, he had me in a choke hold. I had feared for my life.

THE COURT: Okay. So you understood the consequence of your action and the wrongfulness of your action?

THE DEFENDANT: No. I was insane at the time of the act.

The court then made the following finding and ruling regarding Wooden's motion to withdraw his plea:

THE COURT: All right. So, first of all, with respect to defendant's pro se motion, I'll note for the record, the record should be clear, that it was extremely thoughtfully written and recited by this defendant. It indicates his level of competency with respect to how he's thinking.

At the time of the plea, I specifically went through all the proper notifications which this defendant said he understood, including that there was no promise of any particular sentence in this matter. And it's clear from his attorney that he was told they would argue for the minimum sentence, which his attorney, Mr. Goldberg, did in fact do and argued the mitigation of the psychiatric condition, whether it be anxiety, Mr. Goldberg repeatedly referred to it as he wasn't thinking properly. And I did consider all of those things in my original sentence.

There is very little evidence here, other than the self-serving statements of the defendant, that he failed to understand or that he did not knowingly, intelligently, and voluntarily withdraw his not guilty plea to plead guilty to those two counts. So I'm going to deny his motion to withdraw.

We'll make a record also that — and we'll make sure it's journalized, it may not have been journalized originally — that the psychiatric report's being accepted by the [c]ourt.

\* \* \*

Court has previously accepted the guilty plea in Count 4 after informing Mr. Wooden of all his rights. I'm going to incorporate everything I said from the August 27, 2019 transcript.

I've also considered this transcript and all the mitigation that Mr. Goldberg and Mr. Gay indicated to the [c]ourt.

I've also considered the psychiatric clinic reports, all the purposes and principles of felony sentencing, and all the recidivism and seriousness factors.

I've also considered based on the victim's testimony at the time of sentencing, which I'm also incorporating in this matter, in which the victim's wife made a statement to the [c]ourt. Also Prosecutor Mikhaiel's argument.

For the record as well, I'll indicate that and I specifically find consecutive sentences are necessary to protect the community and to punish this defendant. The consecutive sentences are not disproportionate to the harm that was created or harm that he posed or a threat of future danger. Specifically, finding the harm was so great or unusual, a single term does not adequately reflect the seriousness of your conduct.

For the record, once again, the victim lost his spleen, a kidney, was hospitalized on a ventilator, with the gunshot wound.

This defendant hit the victim with a bat prior to shooting him, confronted him for really no good reason. And then when this victim tries to protect himself and all the evidence points that he was not choking out this defendant, that it was rather benign in an attempt to protect himself, this defendant then shot him.

This is the worst form of the offense. This indicates to this [c]ourt that consecutive sentences are necessary. It's not disproportionate to the harm he caused or the threat you remain to the community.

The court then sentenced Wooden to 24 months in prison on Count 4. Based on the court's prior findings, the court found a single sentence was not adequate and

ordered the time be served consecutively to the 14 years imposed on Count 1 for a total of 16 years.

{¶ 15} Before the hearing concluded, Wooden again argued to the court that he received ineffective assistance of counsel because there were medical records not provided to the court or the state from the date of the incident. Wooden argued that these medical records showed Wooden was suffering from an anxiety attack that day, after the incident had already occurred. Wooden's attorney acknowledged that he had reviewed these medical records, stating:

> Your Honor, I did receive all the records during the course of discovery. The anxiety attack that my client suffered post incident, there was nothing to show that he was having an issue prior to going out and engaging with the victim.

The court appointed appellate counsel for Wooden and then concluded the hearing.

{¶ 16} Wooden now appeals, raising six assignments of error for our review:

I. The trial court committed plain error by entering a conviction and sentence for the non-cognizable crime of attempted felonious assault.

II. The trial court erred by denying the defendant's pre-sentence motion to withdraw his guilty plea.

III. The trial court erred by denying the motion to be relieved of the violent offender database registration requirement, which is an unconstitutionally retroactive penalty.

IV. The trial court committed plain error by failing to provide the notices mandated by R.C. 2903.42(a)(1).

V. The trial court erred by failing to make a necessary factual finding in support of the consecutive sentences that were imposed.

VI. The trial court erred by imposing consecutive sentences that are clearly and convincingly not supported by the record.

**LAW AND ANALYSIS**

{¶ 17} In his first assignment of error, Wooden argues that the trial court committed plain error by accepting his guilty plea to the amended Count 4, attempted felonious assault. Because Wooden did not object to pleading guilty to attempted felonious assault, this court reviews for plain error. Wooden pled guilty to an amended Count 4, attempted felonious assault, a third-degree felony in violation of R.C. 2903.11(A)(2) and 2923.02. Wooden is correct that as this court has previously explained, this use of the "attempt statute," R.C. 2923.02, for crimes like felonious assault, which already contain an "attempt to cause physical harm to another" within the elements of the offense, is not a cognizable offense in Ohio:

> The "attempt" statute, R.C. 2923.02(A), for its part, forbids a person from knowingly engaging in conduct that, *if successful*, would *constitute* an offense. According to the legislative committee comment to R.C. 2923.02, this statute "with three *exceptions*, establishes an attempt to commit any offense as an offense in itself." (Emphasis added.) The legislative committee noted that one of the *exceptions* is "an attempt to commit any offense which in itself is defined as an attempt — *in these cases, an attempt is not an offense.*" (Emphasis added.)
>
> Other Ohio district courts of appeals have considered the propriety of a conviction that falls under one of the exceptions listed in the committee comment to R.C. 2923.02. Generally, when a defendant has instituted a direct appeal after being convicted of a crime that is not cognizable at law, that conviction is vacated. *Harper, supra*; *State v. Still* [11th Dist. Lake No. 93-L-195, 1994 Ohio App. LEXIS 5506 (Dec. 9, 1994)]; *State v. Phillips*, [6th Dist. Lucas No. L-97-1217, 1998 Ohio App. LEXIS 2062 (May 8, 1998)].

*State v. McCornell*, 8th Dist. Cuyahoga No. 91400, 2009-Ohio-1245, ¶ 25-26.

Wooden accepted the state's plea offer and knowingly, intelligently, and voluntarily

pleaded guilty to a third-degree felony. This offer permitted Wooden to plead to a third-degree felony rather than a first-degree felony.

{¶ 18} The issue of a defendant pleading to a nonexistent offense pursuant to a plea deal has been dealt with by this court repeatedly and is treated as an invited error when the plea was knowingly, intelligently, and voluntarily made. *State v. D-Bey*, 8th Dist. Cuyahoga No. 109000, 2021-Ohio-60, ¶ 34. In *D-Bey*, the defendant attempted to challenge his guilty plea pursuant to a plea bargain after receiving the benefit of pleading to the nonexistent offense of attempted domestic violence. As stated by this court in *D-Bey*:

> [t]o now challenge his guilty plea, after he received the benefit of the negotiated plea bargain, on the basis that it involved a nonexistent offense, is invited error. *See, e.g., State v. Robinson*, 8th Dist. Cuyahoga No. 107598, 2019-Ohio-2330, ¶ 9, 12; *State v. Brawley*, 8th Dist. Cuyahoga No. 79705, 2002-Ohio-3115, ¶ 6, 20 (defendant's claim that it was "legally impossible" to be charged with offense to which he pled guilty did not warrant withdrawal of his negotiated guilty plea because any error was invited error); *State v. Lester*, 8th Dist. Cuyahoga No. 106850, 2018-Ohio-4893, ¶ 8-11 (although attempted involuntary manslaughter is a nonexistent crime in Ohio, defendant could not seek to set aside his conviction based on a claim that counsel was ineffective by allowing him to plead guilty to the nonexistent offense where defendant negotiated his plea to it with the state); *see also State v. Toms*, 2d Dist. Clark No. 2000 CA 64, 2001 Ohio App. LEXIS 3944, [3-6 (Sept. 7, 2001)] (where defendant negotiated guilty plea to attempted involuntary manslaughter, any error by the trial court in accepting the plea was invited error and did not warrant reversal of defendant's conviction); *State v. Wickham*, 5th Dist. Muskingum No. CA 76-40, 1977 Ohio App. LEXIS 10210, [4-10] (Sept. 28, 1977) [20] (defendant entering a negotiated guilty plea to attempted involuntary manslaughter, even if a nonexistent offense, was not reversible error); *cf. State v. Robinson*, 8th Dist. Cuyahoga No. 107598, 2020-Ohio-98, ¶ 12 ("[I]t must be noted that this court, as well as numerous other courts, have affirmed convictions based on guilty pleas to offenses the state could not prove where the defendant

> knowingly, intelligently, and voluntarily entered a guilty plea as part of a 'negotiated plea agreement.'").
>
> Under the invited error doctrine, "'a party will not be permitted to take advantage of an error that he himself invited or induced the trial court to make.'" *State v. Franks*, 8th Dist. Cuyahoga No. 103682, 2016-Ohio-5241, ¶ 8, quoting *State ex rel. The V Cos. v. Marshall*, 81 Ohio St.3d 467, 471, 1998-Ohio-329, 692 N.E.2d 198 (1998). As this court explained in *Lester*, "the 'negotiated guilty plea * * * has consistently been given judicial approval as both a means of moving heavy criminal dockets and hopefully as the first step toward the defendant's rehabilitation.'" *Lester* at ¶ 9, quoting *Wickham* at [5]. "[B]ecause the 'criminal justice system and the defendant stand to gain by an enlightened use of the negotiated plea system,'" a defendant who negotiated a guilty plea to a nonexistent offense "cannot now complain that it should be set aside." *Lester* at ¶ 10-11, quoting *Wickham* at [6].

*D-Bey* at ¶ 34-35. Like the defendant in *D-Bey*, Wooden attempts to invalidate his guilty plea to the nonexistent offense of attempted felonious assault pursuant to a plea deal with the state, after receiving the negotiated benefit of the plea. Because Wooden invited this error by knowingly, intelligently, and voluntarily pleading guilty to the nonexistent offense of attempted felonious assault, he cannot now complain to set his plea aside. *Id.* at 35, citing *Lester* at ¶ 10-11, quoting *Wickham* at 6. Therefore, Wooden's first assignment of error is overruled.

{¶ 19} Wooden's second assignment of error alleges the trial court erred in denying his motion to withdraw his guilty plea. A motion to withdraw a guilty plea is governed by Crim.R. 32, which states:

> A motion to withdraw a plea of guilty or no contest may be made only before sentencing is imposed; but to correct manifest injustice the court after sentencing may set aside the judgment of conviction and permit the defendant to withdraw his or her plea.

Crim.R. 32.1. While presentence motions to withdraw should be freely and liberally granted, a defendant does not have an absolute right to withdraw his plea prior to sentencing and it is within the sound discretion of the trial court to determine what circumstances justify the granting of any such motion. *State v. Westley*, 8th Dist. Cuyahoga No. 97650, 2012-Ohio-3571, ¶ 6, citing *State v. Xie*, 62 Ohio St.3d 521, 527, 584 N.E.2d 715 (1992). Before ruling on such a motion, the trial court must conduct a hearing to determine if there is a reasonable and legitimate basis for withdrawal of the plea. *State v. Glenn*, 8th Dist. Cuyahoga Nos. 109769, 109796, and 109858, 2021-Ohio-1587, ¶ 11-13, citing *Xie* at paragraph one of the syllabus.

{¶ 20} As previously stated by this court:

> A trial court does not abuse its discretion in overruling a motion to withdraw: (1) where the accused is represented by highly competent counsel, (2) where the accused was afforded a full hearing, pursuant to Crim.R. 11, before he entered the plea, (3) when, after the motion to withdraw if filed, the accused is given a complete and impartial hearing on the motion and (4) where the record reveals that the court gave full and fair consideration to the plea-withdrawal request.

*State v. Glenn*, 8th Dist. Cuyahoga Nos. 109769, 109796, and 109858, 2021-Ohio-1587, ¶ 14 citing *State v. Peterseim*, 68 Ohio App.2d 211, 428 N.E.2d 863 (8th Dist.1980).

{¶ 21} Following a thorough review of the record, we conclude that the trial court did not abuse its discretion in denying the Wooden's motion to withdraw his guilty plea. This court has previously affirmed the denial of a motion to withdraw where it found that the record showed the trial court held a full Crim.R. 11 hearing where competent counsel represented defendant, who indicated his satisfaction

with counsel's advice and assistance, and his understanding of the nature of the offenses and any possible defenses. *State v. Westley*, 8th Dist. Cuyahoga No. 97650, 2012-Ohio-3571, ¶ 10. The defendant denied being threatened or promised anything in exchange for pleading guilty and neither expressed nor exhibited any indicia of confusion, compromised competency, or deficient understanding of any of the consequences of entering a guilty plea. *Id.* Furthermore, the trial court gave the defendant a full and impartial hearing on his motion to withdraw the guilty plea, and full and fair consideration to his plea withdrawal request. *Id.* at ¶ 11. At the hearing, the defendant indicated that he wished to withdraw his plea because he was innocent and he entered the plea under coercion and duress caused by family and defense counsel. *Id.* The defendant only provided blanket statements with no specifics on how he was coerced and also failed to explain why the plea was not knowingly, intelligently, and voluntarily. *Id.*

{¶ 22} In the instant case, its undisputed that Wooden was represented by two competent attorneys and he was afforded a full Crim.R. 11 hearing during which he indicated his satisfaction with his counsel and that confirmed that he understood the nature of the offenses and any possible defenses. Wooden denied being threatened or promised anything in exchange for pleading guilty and neither expressed nor exhibited any indicia of confusion, compromised competency, or deficient understanding of any of the consequences of entering a guilty plea.

{¶ 23} The court then went on to explain the potential sentences and consequences for pleading guilty to each offense and the mandatory postrelease

control after he is released from prison and the consequences of violating the rules of postrelease control. The court explained how Wooden would be required to register with the violent offender database when released. Finally, the court asked Wooden if he had been threatened or promised anything to plead guilty and if he understood that there was no promise of any particular sentence in this case. Wooden stated he understood each aspect of the Crim.R. 11 colloquy before pleading guilty to the amended Counts 1 and 4. The trial court then found Wooden had knowingly, intelligently, and voluntarily pleaded guilty and accepted his pleas.

{¶ 24} After his plea, but before being sentenced on both counts, Wooden filed a motion to withdraw his guilty plea, on which the court held a full and impartial hearing. The court allowed both Wooden and his counsel several opportunities to explain the basis of his motion. Wooden argued he was insane at the time of the incident, which is why he wanted to withdraw his guilty plea so he could "more strongly assert that he was insane at the time of the act." Wooden stated the basis for this change was medical records in his counsel's possession demonstrating that he had a panic attack after nearly killing the victim. Nothing Wooden stated to the trial court explained how this anxiety attack rendered his guilty plea invalid and there is no evidence in the record to support a conclusion that Wooden did not understand his guilty plea. The trial court gave Wooden a full and impartial hearing and ultimately denied his motion. The trial court's decision was not unreasonable or arbitrary, and therefore the court did not abuse its discretion in denying Wooden's motion. Therefore, his second assignment of error is overruled.

{¶ 25} Wooden's third and fourth assignments of error both concern Ohio's violent offender database, also known as Sierah's Law, and will be dealt with together. Wooden's third assignment of error alleges that the trial court erred by denying his motion to be relieved from registering with the violent offender database because it is an unconstitutional retroactive penalty in violation of the Retroactivity Clause of the Ohio Constitution. As this court has previously stated:

> Sierah's Law, which became effective on March 20, 2019, created a statewide violent offender database, which requires those convicted of certain specified offenses to enroll in a registry that will allow law enforcement to track their whereabouts for ten years following release from prison. Violent offenders with VOD duties must appear in person at the local county sheriff's office within ten days following release from prison, or after receiving notice at the sentencing hearing if the offender is not sentenced to prison, to enroll in the database. R.C. 2903.43. Thereafter, the offender must re-register annually for ten years. R.C. 2903.43.

*State v. Beard*, 2021-Ohio-2512, 177 N.E.3d 591, ¶ 25 (8th Dist.). The Ohio Supreme Court has definitively determined "that the application of Sierah's Law to violent offenders who committed their offenses prior to its effective date does not violate the Retroactivity Clause of the Ohio Constitution." *State v. Hubbard*, Slip Opinion No. 2021-Ohio-3710, ¶ 45. Further, this court has recently reaffirmed the holdings in *Hubbard* and *Beard* that Sierah's Law does not violate Ohio Constitution's Retroactivity Clause. *State v. Brown*, 2021-Ohio-4130 at ¶ 28. Therefore, pursuant to the Ohio Supreme Court's conclusion that Sierah's Law does not violate the Retroactivity Clause of the Ohio Constitution, we find that the trial court did not impose an unconstitutionally retroactive penalty. Wooden's third assignment of error is overruled.

{¶ 26} Wooden's fourth assignment of error alleges that the trial court committed plain error by failing to provide the notice required by Sierah's Law as set forth in R.C. 2903.42(A)(1)(a). In order for this court to find the trial court committed plain error, Wooden must establish: "(1) a deviation from a legal rule, (2) that the error was obvious, and (3) that the error affected the basic fairness, integrity, or public reputation of the judicial process and therefore challenged the legitimacy of the underlying judicial process." *State v. Morgan*, 153 Ohio St.3d 196, 2017-Ohio-7565, 103 N.E.3d 784, ¶ 41.

{¶ 27} R.C. 2903.42(A)(1) governs the enrollment in the violent offender database and dictates the required notice the trial court must provide:

> For each person who is classified a violent offender, it is presumed that the violent offender shall be required to enroll in the violent offender database with respect to the offense that so classifies the person and shall have all violent offender database duties with respect to that offense for ten years after the offender initially enrolls in the database. The presumption is a rebuttable presumption that the violent offender may rebut as provided in division (A)(4) of this section, after filing a motion in accordance with division (A)(2)(a) or (b) of this section, whichever is applicable. *Each violent offender shall be informed of the presumption established under this division, of the offender's right to file a motion to rebut the presumption, of the procedure and criteria for rebutting the presumption, and of the effect of a rebuttal and the post-rebuttal hearing procedures and possible outcome*, as follows:
>
> * * *
>
> (C) The judge, official, or official's designee providing the notice under division (A)(3), (A)(4), or (B) of this section shall require the violent offender to read and sign a form stating that the violent offender has received and understands the notice. If the violent offender is unable to read, the judge, official, or official's designee shall inform the violent offender of the violent offender's duties as set forth in the notice and shall certify on the form that the judge, official, or official's designee

informed the violent offender of the violent offender's duties and that the violent offender indicated an understanding of those duties.

(Emphasis added.) The trial court in this case informed Wooden about his registration requirements at Wooden's plea hearing as follows:

> THE COURT: There is one other consequence. A felony of the first degree will require that you report your address as part of a violent offender registry for ten years when you're released from prison. And you'll have to register your information, your personal information, where you're living, where you're working, going to school, all those sorts of things. I believe it's every 180 days for ten years.
>
> If you fail to follow the rules of that violent offender registry, there are consequences including potential prison. Do you understand that?

The court failed to provide Wooden with notice that his registration was presumed, and that the presumption could be rebutted, the procedure and criteria for rebutting the presumption, the effect of a rebuttal, the post-rebuttal hearing procedures and possible outcomes. Furthermore, there is no evidence in the record that Wooden received or signed any written form pursuant to division (C).

{¶ 28} Several courts, including this court, have found that when a statute uses the word "shall," a "word of command," failure to follow the legislature's command constitutes a reversible error. *See State v. Walker*, 2021-Ohio-580, 168 N.E.3d 628, ¶ 36 (8th Dist.) (finding reversible error for trial court's failure to provide notices required in R.C. 2903.42(A)(1)(a)); *State v. Wright*, 2d Dist. Montgomery No. 28368, 2021-Ohio-4107, (finding reversible error where trial court failed to provide and have defendant sign the written notice as required by R.C. 2903.42(C)); *State v. Williams*, 5th Dist. Coshocton No. 2021CA0003, 2021-Ohio-3579, ¶ 40 (vacating defendant's placement on Violent Offender Database when the

trial court failed to inform him at sentencing of the procedure and criteria for rebutting the presumption and possible outcome).

{¶ 29} Therefore, because the trial court failed to provide Wooden with the required verbal and written notices, we sustain Wooden's fourth assignment of error. Accordingly, we vacate his sentence and remand the matter for the trial court to provide Wooden with the proper notice pursuant to R.C. 2903.42(C).

{¶ 30} Our disposition of Wooden's fourth assignment of error renders the remaining assignments of error moot.

{¶ 31} Judgment vacated and remanded for further proceedings consistent with this opinion.

It is ordered that appellant recover from appellee costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
MARY EILEEN KILBANE, JUDGE

MICHELLE J. SHEEHAN, P.J., and
EMANUELLA D. GROVES, J., CONCUR