[Cite as *State v. Pettis*, 2024-Ohio-574.]

## COURT OF APPEALS OF OHIO

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

STATE OF OHIO,                          :

    Plaintiff-Appellee,         :

                                     No. 112629

    v.                          :

AARON T. PETTIS,                        :

    Defendant-Appellant.        :

---

JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED
**RELEASED AND JOURNALIZED:** February 15, 2024

---

Criminal Appeal from the Cuyahoga County Court of Common Pleas
Case No. CR-09-532459-B

---

### *Appearances:*

Michael C. O'Malley, Cuyahoga County Prosecuting Attorney, and Anthony T. Miranda, Assistant Prosecuting Attorney, *for appellee.*

Cullen Sweeney, Cuyahoga County Public Defender, and John T. Martin, Assistant Public Defender, *for appellant.*

EILEEN A. GALLAGHER, P.J.:

{¶ 1} Defendant-appellant Aaron T. Pettis appeals the trial court's denial of his motion to vacate the requirement that he remain enrolled in the violent offender database ("VOD") established by Sierah's Law, R.C. 2903.41 through 2903.44. He argues that the VOD-enrollment requirements are unconstitutional and that his

failure to file a timely motion was excusable neglect; he says the Ohio Department of Rehabilitation and Correction ("ODRC") did not adequately inform him of the procedural requirements for these motions.

{¶ 2} For the reasons that follow, we affirm.

## I. Factual Background and Procedural History

{¶ 3} In December 2009, a Cuyahoga County Grand Jury indicted Pettis and two codefendants for, among other things, aggravated murder with felony-murder and firearm specifications.  In July 2010, pursuant to a plea agreement, the state amended the indictment as to Pettis and he pleaded guilty to one count of voluntary manslaughter in violation of R.C. 2903.03(A).  The charge carried a felony-murder specification under R.C. 2929.04(A)(7) and a one-year firearm specification under R.C. 2941.141(A).  The state dismissed the remaining charges and specifications through a nolle prosequi.  The state described the underlying facts of the case as follows at the change-of-plea hearing:

> Your Honor, on or about November 1, 2009, this defendant was one of three defendants that participated in the unfortunate death of the victim, Donald R. Williams, on the date in question.
>
> This defendant, along with two co-defendants * * * went to the residence of the victim * * *.
>
> * * *
>
> When they went to the home, it's the State's understanding once the victim came out of his home, the three defendants approached him, had him lay down on the ground.  They took his car keys and a pair of shorts that he was wearing and as he retreated, he was shot in the back by another co-defendant.

Your Honor, it's the State's understanding that relative to [Pettis'] participation, he actually drove the victim's car away from the scene and upon being arrested, and they were arrested pretty quickly, within a couple hours or days after this crime, that it was this defendant who came forth first and basically admitted his participation in this crime * * *.

{¶ 4} In August 2010, the trial court sentenced Pettis to one year in prison on the firearm specification, to be served prior, and consecutive, to nine years in prison on the underlying felony, for an aggregate sentence of ten years in prison. On March 20, 2019, while Pettis was incarcerated, Sierah's Law came into effect.

{¶ 5} Sierah's Law created a statewide violent offender database, which requires those convicted of certain specified offenses to enroll in a registry that will allow law enforcement to track their whereabouts for ten years following their release from prison. Violent offenders with VOD duties must appear in person at the local county sheriff's office within ten days following release from prison, or after receiving notice at the sentencing hearing if the offender is not sentenced to prison, to enroll in the database. R.C. 2903.43. Thereafter, the offender must re-register annually for ten years. R.C. 2903.43.

{¶ 6} At least as early as March 2019, the ODRC published written notices of the VOD-enrollment requirements and the procedure for challenging enrollment; these notices are discussed further below.

{¶ 7} Pettis was released from prison in November 2019 and registered in the VOD.

{¶ 8} On February 28, 2020, Pettis filed a motion to vacate VOD registration, arguing that (1) he was not the principal offender, (2) applying VOD registration to him violates constitutional protections against retroactive legislation and multiple punishment and (3) VOD registration violates the constitutional doctrine of separation of powers. The state opposed the motion, defending the constitutionality of the VOD, arguing that Pettis' motion should be denied as untimely and arguing that certain statutory factors weighed in favor of his continued enrollment in the database.

{¶ 9} The motion was briefed and additional discovery related to the timeliness of the motion was exchanged, and the matter was continued as the Ohio Supreme Court considered VOD-related assignments of error in *State v. Hubbard*, Nos. 2020-0544 and 2020-0625. After the Supreme Court issued its decision in that matter — reported at 167 Ohio St.3d 77, 2021-Ohio-3710, 189 N.E.3d 720 — the trial court held hearings on Pettis' motion on December 3, 2021, and February 7, 2023. At those hearings, the following facts were established.

{¶ 10} In March 2019, an ODRC notice explaining the VOD-enrollment requirements was posted in the library at the correctional institution where Pettis was imprisoned. The notice informed inmates about the VOD and stated, among other things, that "[t]o rebut the presumption of registration, prior to release, an incarcerated offender must file a motion with the offender's sentencing court that: 1. [a]sserts and proves, by a preponderance of the evidence, that the offender was not the principal offender, and 2. [r]equests that the court not require the offender

to enroll in the VOD or be required to comply with any VOD duties." Pettis testified that he never saw this notice in the library.

{¶ 11} In April 2019, the ODRC sent Pettis an electronic message through the prison email system (JPAY) containing a nearly identical notice. The email was directed to Pettis' account but the notice was addressed to "all inmates." Pettis testified that he did not read that notice because it was his practice not to read emails from the ODRC, since those emails historically "never really pertained to me * * *." He said he only read emails from his family members.

{¶ 12} Pettis testified that he first saw a copy of the ODRC's VOD notice in his jail pod in early November 2019, "about a couple weeks" before his release. At that time, he learned for the first time that he had to register in the VOD and "saw that I might be exempt because I am not the principal offender." He testified that he did not read the sentence that stated, "To rebut the presumption of registration, prior to release, an incarcerated offender must file a motion * * *." He scanned over that part of the document.

{¶ 13} Pettis signed documents upon his release that included a copy of the March 2019 notice regarding the VOD. Pettis testified that it was his understanding, when he signed this notice, that he could challenge the requirement to register even if he were released and even if he registered initially. But he admitted that he did not read the notice closely at that time; he was focused on going home.

{¶ 14} Pettis went to the Cuyahoga County Public Defender's office on the day that he was released in order to discuss challenging his VOD registration; a

receptionist told him that someone from the office would contact him later. Sometime later, he learned that his case had been assigned to an attorney and that the public defender's office had filed a pleading on his behalf challenging the VOD-registration requirement. Throughout that process, Pettis "always believed there was a way for me not to be on the register; the [VOD]."

{¶ 15} The trial court denied Pettis' motion on March 28, 2023. The court reasoned that Sierah's Law is not prohibited, retroactive legislation or a form of multiple punishment and does not violate the separation of powers. The court further found that Pettis' motion was untimely. Finally, the court stated that it would have denied the motion even if it had been timely because it determined that VOD registration is appropriately applied to Pettis under the facts of the case.

{¶ 16} Pettis appealed, raising the following assignments of error for review:

### First Assignment of Error

The application of VOD to Mr. Pettis violates ex post facto and retroactive legislation prohibitions in the United States and Ohio Constitutions, respectively.

### Second Assignment of Error

Application of the VOD to Mr. Pettis violates the constitutional doctrine of separation of powers.

### Third Assignment of Error

The trial court erred when it found that Mr. Pettis forfeited his right to challenge his VOD status because he filed his VOD challenge out of time.

Fourth Assignment of Error

> The trial court erred in concluding that Mr. Pettis constituted a threat
> to public safety that required registration under VOD.

## II. Law and Analysis

{¶ 17} Pettis argues that the trial court should have vacated the requirement that he remain enrolled in the VOD and subject to these duties because the law is unconstitutional as applied to him. He further argues that the trial court erred when it denied his motion as untimely, because the ODRC did not provide sufficient notice to him that he needed to file the motion before his release. Finally, he argues that even if the VOD were constitutional, he should not be subject to its requirements because he was not the principal offender and because other statutory factors weigh in favor of vacating VOD-registration requirements in his case. We address Pettis' constitutional arguments first.

{¶ 18} Whether a statute is unconstitutional is a question of law subject to de novo review. *Cleveland v. State*, 157 Ohio St.3d 330, 2019-Ohio-3820, 136 N.E.3d 466, ¶ 15, citing *Crutchfield Corp. v. Testa*, 151 Ohio St.3d 278, 2016-Ohio-7760, 88 N.E.3d 900, ¶ 16; *State v. Beard*, 8th Dist. Cuyahoga No. 109630, 2021-Ohio-2512, ¶ 28. "[S]tatutes enjoy a strong presumption of constitutionality." *State v. Hoover*, 123 Ohio St.3d 418, 2009-Ohio-4993, 916 N.E.2d 1056, ¶ 8; *see also State ex rel. Dickman v. Defenbacher*, 164 Ohio St. 142, 147, 128 N.E.2d 59 (1955) ("A regularly enacted statute of Ohio is presumed constitutional and is therefore entitled to the benefit of every presumption in favor of its constitutionality."). Thus, "if at all possible, statutes must be construed in conformity with the Ohio and the

United States Constitutions." *State v. Collier*, 62 Ohio St.3d 267, 269, 581 N.E.2d 552 (1991).

## A. First Assignment of Error – Retroactivity Clause

{¶ 19} Pettis argues that the VOD statutory scheme violates Article II, Section 28 of the Ohio Constitution, which provides that the "general assembly shall have no power to pass retroactive laws." The state responds that the Ohio Supreme Court has considered this argument and decided against Pettis' position. The state is correct.

{¶ 20} In *State v. Hubbard*, 167 Ohio St.3d 77, 2021-Ohio-3710, 189 N.E.3d 720, the Ohio Supreme Court considered "whether the retroactive application of 'Sierah's Law,' R.C. 2903.41 through 2903.44, to offenders who committed their offenses prior to the effective date of those provisions violates the Retroactivity Clause of Article II, Section 28 of the Ohio Constitution." *Hubbard* at ¶ 1 (lead opinion). The offender in *Hubbard* had pleaded guilty, prior to the effective date of Sierah's Law, to an offense that occurred in August 2018. *Id.* at ¶ 6 (lead opinion). The trial court nevertheless notified the offender that he was required to register in the VOD. *Id.* The offender objected, arguing that Sierah's Law violated the Ohio Constitution's Retroactivity Clause. *Id.* The Ohio Supreme Court accepted the offender's appeal to review whether the law violates the Retroactivity Clause and whether it is unconstitutional as applied to offenses committed prior to the law's effective date. *Id.* at ¶ 8–9 (lead opinion).

{¶ 21} After considering the arguments put forth by the parties in that case, the Supreme Court affirmed the offender's sentence. The lead opinion in *Hubbard* garnered the support of three justices, with a fourth justice concurring in judgment only. Nevertheless, this court has held that *Hubbard* "definitively" determined the constitutional question now raised by Pettis; *Hubbard* stands for the holding "'that the application of Sierah's Law to violent offenders who committed their offenses prior to its effective date does not violate the Retroactivity Clause of the Ohio Constitution.'" *State v. Wooden*, 8th Dist. Cuyahoga No. 110340, 2022-Ohio-814, ¶ 25, quoting *Hubbard* at ¶ 45 (lead opinion); *see also State v. Brown*, 8th Dist. Cuyahoga No. 109979, 2021-Ohio-4130, ¶ 28.

{¶ 22} Moreover, in *State v. Beard*, 8th Dist. Cuyahoga No. 109630, 2021-Ohio-2512 — decided prior to the Ohio Supreme Court's decisions in *Hubbard* and *State v. Jarvis*, 167 Ohio St.3d 118, 2021-Ohio-3712, 189 N.E.3d 754 (another case in which a divided court held that the application of Sierah's Law to conduct that occurred prior to its effective date does not violate the Retroactivity Clause) — this court rejected a similar constitutional challenge to Sierah's Law based on the Retroactivity Clause. The court found that the VOD duties were "less onerous" than those applicable to sex offenders under the Adam Walsh Act and that the VOD was similar to the arson offender registry, "which has been constitutionally upheld as a remedial statute." *Beard* at ¶ 43–46, 49, citing *State v. Caldwell*, 2014-Ohio-3566, 18 N.E.3d 467 (1st Dist.), and *State v. Reed*, 2014-Ohio-5463, 25 N.E.3d 480 (11th Dist.). The court concluded that "the registration requirements under Sierah's Law

are not so burdensome as to amount to a form of punishment that may not be imposed retroactively" and that retroactive application of those requirements to an offender who had committed a violent offense prior to the effective date of the VOD statutes was, therefore, constitutional. *Beard* at ¶ 43, 49; *see also State v. Baber*, 2021-Ohio-1506, 171 N.E.3d 1257, ¶ 48 (1st Dist.); *State v. Rike*, 1st Dist. Hamilton No. C-190401, 2020-Ohio-4690, ¶ 62; *State v. Garst*, 2d Dist. Clark No. 2020-CA-51, 2021-Ohio-1516, ¶ 23; *State v. Williams*, 2d Dist. Montgomery No. 28648, 2021-Ohio-1340, ¶ 144; *State v. Misch*, 2021-Ohio-756, 169 N.E.3d 46, ¶ 14 (6th Dist.); *State v. Lamb*, 6th Dist. Lucas No. L-19-1177, 2021-Ohio-87, ¶ 58; *State v. Morgan*, 2020-Ohio-3955, 156 N.E.3d 989, ¶ 35 (9th Dist.).

{¶ 23} Pettis acknowledges these authorities but advocates, without significant analysis distinguishing them, that this court should reach a different outcome here. Pettis' argument does not convince us to depart from this court's precedent acknowledging the binding effect of *Hubbard* and determining that retroactive application of the VOD requirements to an offender who committed a qualifying violent offense prior to the effective date of Sierah's Law does not violate Ohio's Retroactivity Clause.

{¶ 24} We, therefore, overrule Pettis' first assignment of error.

**B. Second Assignment of Error – Separation of Powers**

{¶ 25} Pettis next argues that Sierah's Law violates the constitutional separation-of-powers doctrine.

{¶ 26} Separation of powers "represents the constitutional diffusion of power within our tripartite government." *Norwood v. Horney*, 110 Ohio St.3d 353, 2006-Ohio-3799, 853 N.E.2d 1115, ¶ 114. Although the Ohio Constitution does not contain explicit language establishing the separation of powers, the doctrine is "implicitly embedded in the entire framework of those sections * * * that define the substance and scope of powers granted to the three branches of state government." *S. Euclid v. Jemison*, 28 Ohio St.3d 157, 158–159, 503 N.E.2d 136 (1986); *see also State v. Sterling*, 113 Ohio St.3d 255, 2007-Ohio-1790, 864 N.E.2d 630, ¶ 22.

{¶ 27} Pettis essentially argues that the VOD statutory scheme has the effect of "reopening" the trial court's sentencing order to insert a new punishment — VOD registration — by legislative fiat. His argument relies solely on the Ohio Supreme Court's decision in *State v. Bodyke*, 126 Ohio St.3d 266, 2010-Ohio-2424, 933 N.E.2d 753.

{¶ 28} This court has previously considered and rejected this argument. *Brown* at ¶ 32–44. As this court said in *Brown*:

> The situation in *Bodyke* is not the situation here. Sierah's Law does not involve the reclassification of offenders who were previously classified by judges. It does not vest the executive branch with authority to review judicial decisions. It does not direct another branch of government to alter prior adjudications by the judiciary or otherwise "interfere" with the judiciary's exercise of judicial power.
>
> * * *
>
> The VOD duties established under Sierah's Law are not part of an offender's sentence. Nothing in the VOD "reopens," revises or otherwise modifies [the offender's] final judgment of conviction.

*Brown* at ¶ 42.

{¶ 29} Pettis' argument does not convince us to depart from this court's precedent on the issue. We, therefore, overrule Pettis' second assignment of error.

{¶ 30} Having rejected Pettis' constitutional challenges to the VOD-enrollment requirements, we will now consider whether the trial court erred in finding that his motion to vacate those requirements was untimely.

## C. Third Assignment of Error – Timeliness

{¶ 31} Ohio's VOD statutes allow a person classified as a violent offender to file a motion seeking to rebut the presumption that the person must enroll in the database. *See generally* R.C. 2903.42. R.C. 2903.42(A)(2)(b), which is applicable to Pettis, states as follows, in relevant part:

> A violent offender who wishes to rebut the presumption [of enrollment] shall file a motion in accordance with [the following] * * *:
>
> [T]he offender shall file the motion with the court that sentenced the offender for the offense that classifies the person a violent offender. The motion shall assert that the offender was not the principal offender in the commission of that offense and request that the court not require the offender to enroll in the violent offender database and not have all VOD duties with respect to that offense. *The motion shall be filed prior to the time of the person's release from confinement in the jail, workhouse, state correctional institution, or other institution under the prison term, term of imprisonment, or other term of confinement for the offense * * *.*

(Emphasis added.) R.C. 2903.42(A)(2)(b).

{¶ 32} Pettis acknowledges that he filed his motion months after his release from prison, but he contends that under the circumstances he did not forfeit his right to challenge VOD registration. He argues that (1) the institution where he was incarcerated failed to adequately inform him that he had to file his motion before

his release and (2) he acted diligently to file his motion as soon as possible after his release.

{¶ 33} Violent offenders subject to VOD enrollment must be informed of the presumption that they must enroll and that they have a right to file a motion to rebut that presumption. R.C. 2903.42(A)(1). They must also be informed "of the procedure and criteria for rebutting the presumption, and of the effect of a rebuttal and the post-rebuttal hearing procedures and possible outcome." *Id.* For offenders like Pettis who were incarcerated for an enumerated offense when the VOD came into effect, the onus for providing written notice of those things falls on "the official in charge of the jail, workhouse, state correctional institution, or other institution in which the offender is" confined. R.C. 2903.42(A)(1)(b).

{¶ 34} Here, the ODRC drafted a written notice directed to inmates regarding the VOD; it sent the notice to library staff at the institution where Pettis was incarcerated in March 2019. The ODRC instructed the library staff to post the notice in the institution's library and to make a copy of the relevant legislation available to inmates upon request. The institution took those steps. It seems as though the institution also posted the notice in other common areas, since Pettis testified that he saw the notice in his living quarters. Additionally, the institution emailed the notice directly to Pettis through JPAY in April 2019. And he was provided another copy personally on the day he was released.

{¶ 35} The ODRC's notice also informed offenders that they could read the new law by contacting the institution's library and encouraged offenders to "direct

any questions to your sentencing court or your attorney." A librarian at the institution where Pettis was incarcerated averred that the institution did, in fact, make a copy of S.B. 231 available for inmates upon request.

{¶ 36} Pettis asserts that this notice was insufficient. First, he argues that the institution should have informed him, in person and reasonably in advance of his release, that the presumption of enrollment applied to him and that if he wanted to rebut the presumption he would have to file a motion before his release. Second, he argues that even if posted and emailed notice is sufficient in general, this particular notice did not clearly communicate that an offender's motion has to be made prior to their release. The latter argument comes down to sentence structure.

{¶ 37} The ODRC's notice read as follows:

> To rebut the presumption of registration, prior to release, an incarcerated offender must file a motion with the offender's sentencing court * * *.

{¶ 38} Pettis asserts that the average person (and certainly the average imprisoned offender) would read this sentence to mean only, "If an offender wishes to rebut the presumption of registration prior to their release, the offender must file a motion with the offender's sentencing court." Under this reading, the notice is silent about how an offender could rebut the presumption after their release, if they could do so at all. Pettis argues that the sentence should have been phrased like this: "To rebut the presumption of registration, an incarcerated offender must file a motion with the sentencing court prior to release."

**{¶ 39}** Pettis further suggests that the ambiguity in that notice, along with the way the notice was provided to inmates, denied him due process of law. He asks this court to apply "principles of equitable tolling and excusable neglect," which he says excuse him from the timing requirement of R.C. 2903.42(A)(2)(b).

**{¶ 40}** The state defends the ODRC's notice as "reasonably calculated to apprise Pettis of the requirements of Sierah's Law." It rejects the suggestion that the ODRC was required to provide individual inmates in-person notice of the VOD presumption and their right to file a motion to rebut it. It states, pithily, that the "ODRC can provide written information to inmates but it cannot make them read it."

**{¶ 41}** After careful consideration, we agree that the trial court properly denied Pettis' motion as untimely. This court has previously stated that notice under R.C. 2903.42(A)(1) "must contain sufficient particularity to afford a person a meaningful opportunity to defend his or her rights in a matter." *State v. Walker*, 2021-Ohio-580, 168 N.E.3d 628, ¶ 39 (8th Dist.). Here, the ODRC informed Pettis in writing — by notices posted in the library and in his living quarters and also individually by electronic message — about the VOD-enrollment requirements and the procedure for making a motion to rebut the presumption. We need not dwell on Pettis' argument that the institution's means of communicating this notice was insufficient, because Pettis himself testified that he saw the notice and understood that it applied to him, that he would have to enroll and that there was a possibility that he could be excused from enrolling. Stated differently, we need not decide in

this appeal whether the ODRC's notice procedures were adequate to give an inmate constructive notice because Pettis' testimony shows that his institution gave him actual notice of the VOD-enrollment requirements at least two weeks before his release.

{¶ 42} His argument regarding the notice's phrasing is similarly not well-taken. We certainly agree that the ODRC's notice would have been be clearer if the sentence on timing were phrased in the way Pettis suggests, something like:

> To rebut the presumption of registration, an incarcerated offender must file a motion with the offender's sentencing court. The motion must be filed prior to the offender's release and must: * * *

{¶ 43} This sentence is reasonably calculated to inform inmates of the deadline for filing these motions. Its phrasing is not convoluted or misleading. While the possibility for a miscue exists, it is unreasonable to expect that a reader would persist in the erroneous assumption after reading the notice as a whole. That is to say, it is unreasonable that a person would misunderstand this sentence in the way Pettis suggests when the notice is otherwise silent about whether and how an offender can seek to rebut the presumption after release.

{¶ 44} Moreover, Pettis does not actually claim that he was misled by this sentence. To the contrary, he admits that he did not read that section of the notice at all. While he understood that the notice applied to him and that it might be possible to be excused from VOD registration, he skipped over the information about how he should go about getting excused. He did not request a copy of the relevant legislation, which was available in the library. He did not contact the

sentencing court or an attorney prior to his release. Under these circumstances, it is difficult to see his belief that he could file a motion after his release as anything but a hopeful assumption.

{¶ 45} The burden of informing Pettis of the relevant procedures for filing a motion fell on the institution housing him. The ultimate question is whether the institution adequately provided the information required by R.C. 2903.42(A)(2)(b) to Pettis. It did.

{¶ 46} Reading the ODRC's notice in its entirety and considering that the institution made the relevant legislation available for review upon request, we find that the ODRC's notice adequately informed Pettis of the presumption established under the VOD statutes, of his right to file a motion to rebut the presumption, of the procedure and criteria for rebutting the presumption, and of the effect of a rebuttal and the post-rebuttal hearing procedures and possible outcome. In other words, we find that the institution complied with R.C. 2903.42(A)(1) as to Pettis and conclude that its notice contained sufficient particularity to afford Pettis a meaningful opportunity to defend his rights in this matter. *See State v. Walker*, 2021-Ohio-580, 168 N.E.3d 628, ¶ 39 (8th Dist.).

{¶ 47} Because Pettis failed to comply with R.C. 2903.42(A)(2)(b) when he filed his motion after being released, it was not error for the trial court to deny his motion to vacate his VOD enrollment and related obligations.

{¶ 48} We, therefore, overrule Pettis' third assignment of error.

## D. Fourth Assignment of Error – Statutory VOD Factors

{¶ 49} Because we have determined that the trial court correctly denied Pettis' motion as untimely, we may affirm the trial court's order on that basis alone. We, therefore, disregard Pettis' fourth assignment of error, which focused on the trial court's application of the statutory factors a court must consider when weighing a timely filed motion to vacate VOD enrollment obligations.

## III. Conclusion

{¶ 50} Having overruled Pettis' first, second, and third assignments of error, and having disregarded his fourth, we affirm.

The court finds there were reasonable grounds for this appeal.

It is ordered that the appellee recover from the appellant the costs herein taxed.

It is ordered that a special mandate issue out of this court directing the Cuyahoga County Court of Common Pleas to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
EILEEN A. GALLAGHER, PRESIDING JUDGE

MARY J. BOYLE, J., and
SEAN C. GALLAGHER, J., CONCUR